W. T. JUSTICE v. R. S. LUTHER.

*Evidence—Estoppel.*

1. An *ex parte* survey of the line in dispute, in the absence of the parties, and not ordered by the Court, is admissible in evidence, as tending to show where the line is.

2. When a line from "the Alder Spring to a post oak" has been fixed by the verdict of a jury, rendered in 1874, as the true line between the parties, and the location of the post oak being known, the only question on this trial was the location of the Alder Spring, as fixed by the verdict of 1874; *Held*, that the location of a white oak called for in a grant, issued in 1803, was inadmissible, the Alder Spring not being called for in this grant nor in any other grant or deed which was used in the trial in 1874, when the verdict was rendered.

3. The defendant offered to prove, by his own testimony, the contents of a paper writing executed in 1859, whereby plaintiff and one Logan (whose estate defendant owned) agreed to submit the controversy, in reference to this line, to arbitration, and to show the loss of this paper, proved that it was deposited with one Penly for safe keeping, who, upon being applied to for it, said it was · lost; that said Penly was summoned as a witness, but had changed his residence to another State; *Held*, that this evidence was incompetent, because; 1st, the submission to referees was prior to the verdict of 1874, and, if it had any effect, it would be to control or affect the verdict as an estoppel; 2nd before secondary evidence is admissible to prove the contents of a writing, its absence must be legally accounted for, and this is not done by showing the declaration of the party with whom it was deposited, that it was lost, or that he had removed his residence from this into another State.

4. The report of the action of such referees is also inadmissible.

(*Harper* v. *Hancock*, 6 Ired., 124; *Threadgill* v. *White*, 11 Ired., 591; *McCracken* v. *McCrary*, 5 Jones, 399, cited and approved).

CIVIL ACTION, for the recovery of land, tried at Spring Term, 1883, of the Superior Court of BUNCOMBE county, before *Avery, Judge,* and a jury.

There was a verdict and judgment for the plaintiff, from which the defendant appealed.

The case is sufficiently stated in the opinion of the Court.

*Mr. Chas. A. Moore,* for the plaintiff.
*Messrs. T. F. Davidson* and *S. F. Mordecai,* for the defendant.

SMITH, C. J.   This action, begun on August 26th, 1874, is prosecuted for the recovery of the possession of a small portion of land, alleged to be wrongfully withheld by the defendant, parcel of a tract specifically described in the complaint, and consisting of one hundred and ninety-one acres.   No answer seems to have been made, or if made, it is lost, and not found in the record. After numerous continuances, the cause came on for trial before a jury, at Spring Term, 1883, of Buncombe Superior Court, when a verdict was rendered, in which they "find all the issues in favor of the plaintiff, and assess his damages at," &c.

The plaintiff, in support of his title, introduced in evidence:—

I.  A grant issued November 24th, 1803, to Samuel Harris.

II.  A second grant issued December 4, 1804, to the same.

III.  A deed made July 20th, 1805, by Samuel Harris to James Patton and Andrew Erwin, for 120 acres, calling for the first grant, and purporting to convey part of the land contained in it.

IV.  A deed dated December 14th, 1838, from James Patton to Wilson Green, for the land described in that next preceding deed.

V.  A deed from Daniel Green, shown to be the heir-at-law of Wilson Green, who had died intestate, to the plaintiff, bearing date August 25th, 1870.   Upon this state of the proofs it was admitted that the plaintiff showed a *prima facie* title to the land described in the last mentioned deed to himself.

To rebut this, the defendant relied on an estoppel, and in its support produced the record of a former action between the plaintiff and himself, with reversed relations, wherein he, the defendant, was plaintiff, and the present plaintiff was defendant, in a controversy about the title and boundary of the same land, and which action terminated in a verdict of the jury in these words: "That they find the issues in favor of the plaintiff, and find the true line of Harris's tract, No. 1, to be from the Alder spring to the post oak, the beginning corner of No. 2."

Upon this verdict, judgment was rendered, and the plantiff, (the present defendant,) put in possession under a writ issued for

that purpose.    In executing the writ, the deputy sheriff, one Jones, caused the line to be run by one S. B. Gudger, a surveyor, from the post oak to the Alder spring, as understood to have been intended in the verdict, at which running the present plaintiff, being there part of the time, made no protest.    There was no dispute as to the position of the post oak, as fixing the northeast corner of the second grant issued to Harris, but the controversy was as to the location of the Alder spring, between which terminal objects, a direct line formed the divisional boundary between the parties.    The Court ruled, that the only inquiry for the jury to make, was as to the location of this line, and whether the defendant's possession extended over and south of it. .

The testimony and exceptions taken to the rulings of the Court during the progress of the trial, which are before us on the appeal, are in substance as follows:

I. B. F. Patton, a witness for the plaintiff, testified, that he ran the line from the post oak to the spring known as the Alder spring, and that it passed through the defendant's enclosure, leaving about two acres south of it.    The line so run since this action was brought, is north of that located by Gudger.

II. W. G. Candler, examined by the plaintiff, also stated that he went on the premises with one Culberson, in the absence of both parties, and after the suit was instituted, and ran the line from the post oak, to what is known as the Alder spring, the only spring whose water was used, and the locality of which is known as the Alder spring, and a part of the defendant's possession south of the line.

This testimony was received, after objection that the witness was not appointed by the Court to make the survey.    It was competent to be heard, as is any other pertinent testimony tending to ascertain where the line is, while surveys made under an order of the Court, have of course greater weight, and as showing the precise contentions of parties, calculated and intended more to elucidate, than can be a mere *ex-parte* survey.    But the latter is not for this reason to be excluded.

Andrew McAfee, for the plaintiff, testified that he was present at the surveys of both the preceding witnesses, and that the defendant had about four acres south of the lines run, enclosed and in cultivation in wheat; that he "uses water out of the spring that Patton and Candler ran to," and has done so "for thirty years;" that there is no other spring in that vicinity, and it "is known as the Alder Spring," and that he, the witness, conveys the water a short distance from the spring to a spout.

One Meredith Williams, and the plaintiff, gave similar evidence about the line run, and the defendant's possession South of it.

For the defendant, several witnesses were examined, the material import of whose testimony is this:

I. Jones, the deputy who executed the writ of possession, caused the line to be surveyed by Gudger, who was assisted by two chain-bearers, and put the plaintiff in that action in possession up to it. Justice was present some of the time and objected. Defendant's fence is on or near the line.

1I. Samuel Gudger, in making his survey for the deputy, "began at the spout, and ran half-way towards the end, then he began at the post-oak, and ran west to about the centre, or half-distance of the entire line. The two lines were about thirty-five feet apart. He then ran from the post-oak, allowing one degree first, and struck the spout. The spout was selected, "because the waters from two sources converge there." Defendant's fence, run sometime afterwards, was north of the line. When witness first knew the place, no one used the water. There were then two springs or sources of branches. McAfee had not then moved to the locality. The spring, bearing his name, is about four rods north of the other, and between them, about equally distant from each, is the spout. There formerly was more marshy ground about McAfee's spring—there was no spring cleaned out. Alders grew around the other spring.

Upon cross-examination, witness stated that he ran neither to nor from any spring—has never known water used from any

other spring but McAfee's, and these during late years have been known as the Alder Springs.

Culberson, seventy years of age and owning land in two miles of the place, has known the Alder Springs since he was a boy— it went by that name. When first known, there was no certain spot to get water—a marsh extending twenty or twenty-five steps. There are two streams. The spout is north of the centre of the marsh. The defendant then proposed to show where a white-oak tree was called for in the grant of 1803, and that it was 74 poles east of the Alder Springs, with a view of thus fixing the location of the latter. Neither this grant, nor any other grant or deed exhibited in evidence on the trial of the first suit, called for the Alder Springs, nor did the grant of 1803 call for the post-oak, or, as alleged, reach it.

The plaintiff objected, on the ground that it was an effort to use the same testimony as that before the jury that rendered the former verdict, and to re-open matters there settled, and of which that verdict was conclusive. The evidence was ruled out, and for reasons entirely satisfactory. The sole question was, where was the Alder Springs, as intended in the verdict *when delivered* at Spring Term, 1874. To this issue the minds of the jury had been directed, by an early ruling in the cause. The verdict and corresponding judgment, spoke words applicable to the state of things then existing, and to the names which natural objects *then bore*. Where was the point designated as the " Alder Springs," from which the line was to run to the post oak, intended by the jury by their finding, was the sole question now to be determined in giving effect to the verdict.

The defendant then offered to prove by his own testimony, that a paper writing, made in 1869, by the plaintiff and Charles Logan, to whose estate he claims to have since succeeded, was entered into, to submit the matter now in controversy to R. L. Jones, J. T. Morgan and J. R. Jones; that it had been placed in the hands of one Penley for safe keeping, to whom defendant had applied for it, and who in answer said it was lost. That

Penley had been summoned as a witness, but he had removed from the State to Virginia afterwards; and that Logan had also removed, and his place of residence was not known. Notice had also been served on the plaintiff to produce the paper, but it had not been done.

Upon this preliminary showing, the defendant proposed to prove the contents of the writing from memory. The proposed evidence was rejected on objection, for the two-fold reason, that the paper was not shown to be lost, so as to let in secondary proof of its contents, and it would be irrelevant if the original were present. This ruling also meets our approval.

I. It will be observed that this suggested agreement for submission to referees, was before the institution of the first action, and its introduction would be to go behind the former verdict, and, if not to control, to affect it as an estoppel.

II. The loss of a paper, traced to the hands of a depositary, cannot be proved by his unsworn declaration of the fact. The evidence addressed to the Court, must be reasonably sufficient to account for the absence of the original, and this must be on oath, not mere hearsay.

III. Proof of the residence of the person in whose custody the writing is, or ought to be, in another State, does not warrant a relaxation of the rule, which requires the production of the original as the best evidence of its own contents. *Harper* v. *Hancock,* 6 Ired., 124; *Threadgill* v. *White,* 11 Ired., 591; *McCracken* v. *McCrary,* 5 Jones, 399.

Proof had been received from one of the referees, Joshua R. Jones, without objection, that himself and two other associates, did run a line between the plaintiff and Logan, when both of them and Penley were present. The defendants then offered their report, which, on objection, was ruled out.

The result is thus expressed.

" After two days' labor surveying and running lines, we agreed as follows: Beginning on a black oak sapling, in Peebles' line,

and runs due East, passing thence between the said Charles Logan and said Justice's fields and premises, in a few rods of Logan's fence, to the terminus of said Logan's land, the line well marked by one of the referees, this to the best of our recollection.

J. R. JONES.

RUSSELL L. JONES.

March 22, 1872.          J. T. MORGAN."

"I certify, that on or about the time specified, I was engaged and did survey for the above referees, and did run the said division line between Dr. C. Logan and W. T. Justice.

DAVID M. GUDGER."

The evidence of the fact that this survey and running of lines was made, was received, and as far as the plaintiff's assent may be inferred from his presence, and the value of the evidence upon the point in controversy was before the jury for them to consider and weigh. But as the carrying into effect of a previous agreement to refer, the report was properly ruled out, and for reasons already suggested.

But we do not perceive what harm could come from the refusal to admit the award, or what relevancy it has to the question of the proper position of the springs. The jury locate them, and as no exceptions are taken to the want of evidence to determine their position, nor to any instructions from the Judge, there is no ground for disturbing the verdict, and the judgment must be affirmed.

No error.          Affirmed.