BENNIE ROE, BY NEXT FRIEND, v. JAMES JOURNEGAN.

(Filed 27 March, 1918.)

1. **Deeds and Conveyances—Grantees Not in Esse—Statutes.**

A deed executed and delivered in 1881, or prior to the Acts of 1893, ch. 498 (now Revisal, sec. 1045), conveying lands, etc., to persons not then *in esse* may not be revoked by the grantor.

2. **Evidence—Declarations—Against Interest.**

Where the grantor conveys land by gift to his son and later to another person under a registered deed, the declarations of the son made shortly prior to the later deed, that his father had offered to give him the place, but he would not accept it, do not, of themselves, show that the declarations were against the son's interest, and they are incompetent evidence in favor of the son's title to the lands.

3. **Evidence—Admissions—Lands—Title.**

Admissions as to title must be made by the adverse party or one under whom he claims to be admissible against him in an action to recover lands.

4. **Evidence—Title—Lands—Declarations—Interest—Remainderman.**

Declarations of a deceased person affecting title to lands should be most closely scrutinized and admitted as evidence with great caution; and when

they are admitted, it is upon the ground that, being against declarant's interest, they are as efficacious of the truth of the matter as the oath and cross-examination; and when admissible, the declarations of a life tenant may be competent against the remainderman. The distinction between admissions and declarations discussed by ALLEN, J.

**5. Evidence—Title—Lands—Declarations—Burden of Proof.**

One relying on declarations of a deceased person as affecting his title and made against his interest must show that the declarant was aware of their effect at the time; and where the facts and circumstances tend to disprove this, and only the mere fact of the declaration is testified to, such declarations are inadmissible.

**6. Evidence—Lands—Title—Ante Litem Motam.**

The doctrine of *ante litem motam*, in its relation to the admissibility of declarations affecting title to lands, applies to the beginning of the controversy and not the action.

**7. Deeds and Conveyances—Delivery—Presumptions—Evidence.**

The registration of a deed presumes delivery and places the burden of proof on the one who controverts its delivery.

**8. Pleadings—Admissions—Delivery—Evidence.**

Where declarations are relied on in an action to recover lands to show that a deed to lands had not been delivered, and the pleadings and admissions show that the deed was delivered: *Semble*, it is not open to a party on the trial to deny its delivery.

APPEAL by plaintiff from *Lyon, J.,* at the August Term, 1917, of FRANKLIN.

This is an action for the recovery of land. Plaintiffs claim under the deed of their grandfather, William Roe, dated 26 August, 1881, and recorded 27 May, 1882, made to plaintiff's father, Winfield Scott Roe.

Defendant claims under a deed made by William Roe to Winfield Scott Roe dated 2 January, 1886, and recorded 25 January, 1886, for the same land, and subsequent deed of W. S. Roe and wife to defendant, also duly recorded.

The deed of 26 August, 1881, contained *habendum* as follows: "To have and to hold to him, the said W. S. Roe, during his natural life; and if he should have any living child or children, then to them; or if his wife, Mary Roe, should survive him, then to her during her lifetime. The said W. S. Roe having no children, then the said land is to revert back as a part of my estate."

The second deed was in fee simple; was made after the death of Mary Roe; the second taker for life under the first deed had died without issue, and the deed contained the following reference to the first named deed: "It being the tract of land deeded by the said William Roe and wife to W. S. Roe during his lifetime, and containing 50 acres, more or less."

W. S. Roe married a second time and died in July, 1915, leaving issue surviving, Elijah Roe and Bennie Roe, plaintiffs.

The real controversy on the trial was as to the delivery of the deed of 1881, and on this question the defendant was permitted to prove by a witness that he went to see W. S. Roe a short time before the deed of 1886 was executed for the purpose of buying the land, and that he, W. S. Roe, said "he didn't have any land to sell; said his father had offered to give him a place, but he wouldn't accept it."

The plaintiffs excepted.

There was a verdict and judgment in favor of the defendant, and the plaintiffs appealed.

*William H. Ruffin, Thomas W. Ruffin, and William W. Boddie for plaintiffs.*

*Yarborough & Beam and A. J. Harris for defendant.*

ALLEN, J. The plaintiffs are the owners of the land in controversy if the deed of 1881 was delivered, although not then *in esse,* because of the conveyance by the deed of a life estate to W. S. Roe (*Powell v. Powell,* 168 N. C., 561), and the deed of 1886 could not affect their title as it was executed prior to the enactment of the statute conferring the power to revoke a deed when made to persons not then in being (Acts 1893, ch. 498, now Revisal, sec. 1045), and the title having passed from the grantor by the first deed, if delivered, it could not be recalled. *Buchanan v. Clarke,* 164 N. C., 58.

These positions, practically conceded by the parties, show the importance and materiality of the declaration of W. S. Roe, which is the only evidence offered by the defendant to rebut the presumption of delivery arising from the registration of the deed, and the question presented is as to the admissibility of this declaration.

It was not competent as an admission because not made by a party, or by one under whom the plaintiffs claim, as they derive their title from the deed of William Roe and not from W. S. Roe, and if admissible at all it must be as a declaration against interest, which is a recognized exception to the rule excluding hearsay evidence.

Declarations against interest are admitted from necessity, as otherwise, the declarant being dead, a party might be deprived of the opportunity to establish a just cause, and because self-interest is supposed to supply a test of truth as efficacious as the oath and cross-examination; and it has been held, in the application of the rule, that the declaration of a life tenant may be competent against a remainderman. *Smith v. Moore,* 142 N. C., 287.

The courts, however, while receiving evidence of this character, say that "the testimony of witnesses based merely upon memory as to oral

statements made by persons since deceased should be received with great caution, and if a long time has elapsed since the alleged statements (in this case more than thirty years), such testimony is held to be most unsatisfactory and inconclusive." *Dixon v. Dixon,* Ann. Cas., 1915 D, 622.

"Words are harder to observe than physical things." Minto Logic., 290. "The narration of conversations correctly is the most difficult fact of memory and expression." Piffett's Succession, 37; Lee Ann., 871. "Conversations are always but partially recollected, never truly stated." Note to *Wilbur v. Toothaker,* 18 Ann. Cas., 1191.

"This character of evidence is the weakest and least satisfactory of any in persuasive character. It may be observed that they ought to be received with great caution. 'The evidence, consisting as it does in the mere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed, or not having clearly expressed his own meaning, or the witness having misunderstood him. It frequently happens, also, that the witness, by unintentionally altering a few of the expressions really used, gives an effect to the statement completely at variance with what the party did say.' 1 Green on Ev., 16th, 2d sec. 200.

"Though the witness who testifies to the oral statement may be honest, his memory may be at fault, or he may have failed to comprehend and interpret the statement as it was intended to be understood by the speaker. . . . Moreover, so easy is it to fabricate such evidence that there is strong temptation to a dishonest or interested witness to do so. (17 Cyc., 806.) After enumerating these elements of weakness, the author of the article in Cyc. on this subject, at page 808, remarks: 'Exposed to all the infirmities just mentioned is the testimony to oral statements of dead men, which is invariably subjected to the closest scrutiny in view of the impossibility in most cases of convicting the witness of perjury if his testimony is willfully false.' " *Escollier v. R. R.,* Ann. Cases, 1914 B., 470-1.

In furtherance of this policy of caution and scrutiny, the line has been marked between the declarations of deceased persons and the admissions of parties, which are subject to some but not to all the infirmities of evidence of declarations, and rules have been formulated prescribing tests for their admissibility. The distinction between admissions and declarations against interest is very clearly stated by Mr. Chamberlayne in his work on Evidence, Vol. 2, sec. 1235, as follows:

"(a) The admission is the statement of a party; the declaration against interest is made by a third person. (b) To be admissible at all, the declaration against interest must contravene, to the knowledge of the declarant, his pecuniary or proprietary interest. In case of an ad-

mission, such a state of affairs would enhance the probative weight; it would not, however, be essential to admissibility. To secure that, it is sufficient that the statement should be the voluntary act of the party and cover a probative or *res gestæ* fact. (*c*) The declaration against interest is secondary evidence and is incompetent unless the declarant is shown to be dead, absent from the jurisdiction, or unavailable for some other sufficient cause. The admission, on the contrary, is primary evidence and is competent though the declarant be present in court and ready to testify. (*d*) An admission may be made at any time. The declaration against interest is incompetent if made *post litem motam.* (*e*) The admissibility of a declaration against interest is governed by the rules of sound reason. That of an admission is determined largely by procedure."

The same author says, Vol. 4, sec. 2770, that the declarant must have been distinctly conscious at the time of making his assertion that it was directly opposed to his pecuniary or proprietary interests, that there was "an absence of controlling motive to misrepresent" (sec. 2772); that "the burden of proving that the declaration was against the interest of the deceased declarant lies upon the proponment of the evidence" (sec. 2773); that "To establish the degree of relevancy or probative force upon which this exception to the hearsay rule rests, it is essential that the speaker should possess a present, rather than be expecting to acquire a future interest. He must not only possess this interest in point of fact, but be aware that he does so. The willingness of the declarant to minimize his apparent interest must not spring from a desire that a still greater gain will result by his making an apparently trifling sacrifice, so that he may be really the victim of a controlling motive to misrepresent while seemingly forced to speak the truth, though highly injurious to himself. In other words, it is required that the interest in derogation of which the declarant speaks should be shown by the proponent to be (1) actual, (2) known to the declarant, (3) the substantial interest involved in the matter" (sec. 2781); that "should the interest of the declarant be erroneously supposed by him to be served by the statement which he is making, the latter is devoid of probative force, although as the situation actually exists it is very much against his pecuniary or proprietary interest" (sec. 2782); and "it should be made to appear by the proponent that the declarant is not, as it were, making a jettison, throwing over a small portion of his cargo for the sake of saving the rest. Should the court come to entertain a suspicion that it is dealing with an attempt to prejudice a small interest for the purpose or with the result of saving a large one, the evidence will be rejected" (sec. 2784).

The other text-writers lay down the same general principles, although not usually with the same elaboration, and applying them to the evidence before us, the declaration of W. S. Roe is incompetent.

We will not put our decision on the ground that the declaration was not made *ante litem motam,* which means the beginning of a controversy, and not of an action (*Westfeldt v. Adams,* 131 N. C., 385), because there is a conflict of authority as to the necessity for this requirement; but if we did so, it appears that the controversy as to the delivery of the deed had already arisen, as the registration of the deed presumed delivery and the declarant was denying it.

We prefer to deal with the question as to whether the defendant has sustained the burden of showing that the declaration was against the interest of the declarant, that "he had no probable motive to falsify the fact declared" (*Smith v. Moore, supra*), and that there was "a total absence of interest to pervert the fact." *Smith v. Moore,* quoting from Lord Ellenborough.

Whatever else may be in doubt, it is clear that the declarant did not believe it was against his interest to say that the deed of 1881 had not been delivered, and there was therefore absent the consciousness of self-interest, which takes the place of the oath and cross-examination, and without which the declaration is not admissible.

So far from thinking such a declaration against his interest, he evidently thought the deed of 1881 conveying to him a life estate was injurious to him, because he says he would not accept it. Nor is the declaration shown to be free from a probable motive to pervert the truth. If the deed of 1881 could be shown to be inoperative, the title to the fee would be in his father, to which he might reasonably hope to succeed as heir if he could not procure another deed, and there is no suggestion in the record of any influence which could by any possibility frustrate his expectation of owning the whole estate one way or the other. The declaration was also made but a short time before the execution of the deed of 1886 conveying to him the fee, the nearness in point of time permitting an inference of one being a preparation for the other.

We therefore conclude that the evidence ought not to have been admitted; but it is doubtful if the question of delivery is open to the defendant.

The deed of 1886 is not set out in full, but the recital, "it being the tract of land deeded by the said William Roe and wife to W. S. Roe during his lifetime," would seem to be an acknowledgment of the delivery of the deed of 1881, but if this is not binding on the defendant, the delivery of the deed of 1881 is not only not put in issue by the pleadings, but it is substantially admitted.

It is alleged in the complaint:

"1. That on 26 August, 1881, William Roe and wife, Elizabeth Roe, grandparents of the said Bennie Roe and Elijah Roe, conveyed to their son, Winfield Scott Roe, father of the plaintiffs, by a deed which is recorded in the registry of Franklin County in Book 60, at page 225, a tract of land in said county of Franklin, which is bounded and described as follows:" (Description omitted.)

The habendum of said deed being as follows: "To have and to hold to him, the said W. S. Roe, during his natural life; and if he should have any living child or children, then to them; or if his wife, Mary Roe, should survive him, then to her during her lifetime; and after the death of the said W. S. Roe and his wife, Mary Roe, the said W. S. Roe having no children, then said land is to revert back as a part of my estate."

"2. That on 2 January, 1886, after the deed described in paragraph 1 hereof had been delivered and put to record, the said William Roe and wife executed and delivered to said W. S. Roe a deed conveying said 50 acres of land to him in fee simple, which deed is recorded in said registry in Book 71, page 269. The record of both of said deeds will be offered in evidence when in the course of the trial of this cause the same becomes necessary."

The answer to these paragraphs is as follows:

"1. It is admitted that the deed referred to in paragraph 1 of the complaint appears of record in the office of the register of deeds of Franklin County in Book 60, page 225, but in connection therewith, this defendant says that on the date the said deed purports to have been dated, to wit, 26 August, 1881, and the date when the same appears to have been recorded, to wit ......................., the said plaintiffs, Bennie Roe and Elijah Roe, had neither of them been born, and the said W. S. Roe had never had any children. Mary Roe, wife of W. S. Roe, was living, but died prior to 2 January, 1886, without ever having had any children. And this defendant further says that no consideration passed, or could have passed, from the said plaintiffs to the said William Roe and Elizabeth Roe, grantors in said deed, the sole consideration cited therein being natural love and affection for the said W. S. Roe. This defendant, therefore, insists that said plaintiffs not being in existence on said 26 August, 1881, and no consideration having passed from them or from any one in their behalf, they did not take, and could not have taken, any estate or interest in the lands described in said deed. Except as herein admitted, paragraph 1 of the complaint is denied.

"2. The execution and delivery of the deed referred to in paragraph 2 of the complaint, whereby William Roe and wife conveyed the said lands to W. S. Roe in fee simple, is admitted; and it is further true that on said 2 January, 1886, the said W. S. Roe had no children or wife, Mary

Roe, his former wife, having died some time prior to said date without ever having had any children."

It thus appears from the first paragraph of the answer that the only attacks made by the defendant on the deed of 1881 are that it was executed when the plaintiffs were not *in esse,* and that it was without consideration, and from the second that the allegation in the second paragraph of the complaint, that the deed of 1886 was executed after the deed of 1881 "had been *delivered* and put to record," is not denied.

We are therefore of opinion, on the whole record, that the plaintiffs are entitled to a

New trial.