STATE v. C. T. BLAKENEY.

(Filed 7 December, 1927.)

**Evidence — Hearsay — Criminal Law — Burnings — Motive—Banks and Banking—Officers—Cashier.**

   Where the cashier of a bank is indicted for the felonious burning of the building in which the bank conducted its business and kept its records, and to show motive the State relies upon evidence tending to show the defendant's defalcation and his purpose to conceal it by the destruction of the bank's ledger wherein the information should have been found by the State Bank Examiner, then examining the defendant's books: *Held,* testimony of the bank examiner to the effect that a statement of the bank handed to him by another official of his department supplied the information by which he ascertained the defalcation of the defendant, is incompetent as hearsay, its genuineness and accuracy not having been testified to by any competent witness, and its admission is reversible error in the absence of admissions or evidence rendering it competent. The exceptions to the rule of hearsay evidence stated by STACY, C. J.

APPEAL by defendant from *Schenck, J.,* at April Term, 1927, of CABARRUS.

Criminal prosecution tried upon an indictment charging the defendant with the felonious burning of a building on 8 April, 1926, used at the time by the Bank of Midland in carrying on its banking business.

The evidence was largely circumstantial, but quite sufficient to carry the case to the jury. It was the theory of the State that the defendant, cashier of the Bank of Midland, was short in his accounts, and that he set fire to the building in order to destroy the records of the bank and thus cover up or hide his irregularities or defalcations.

At the time the fire occurred an audit of the bank was being made by W. S. Coursey under the direction of State Banking Department; and, on the trial, he was permitted to testify, over the defendant's objection, as follows:

"Q. State what the result of your investigation disclosed as to the condition of the bank. A. I can't answer that because the general ledger of the bank was destroyed; therefore, some information which I carried on my balance sheet could not have been gotten from the general ledger or from any record of the bank, and was obtained from the records in Raleigh. I got it from a public record in Raleigh; examination of the Bank of Midland by a State bank examiner; this was a State record; that was the amount of the deficit on 6 March. Got that from the bank examiner's report in the office in Raleigh.

"Q. Did you go to Raleigh and get it yourself? A. It was handed to me by Mr. Latham, the chief bank examiner.

"Q. Where? A. I don't remember where.

"Q. Was it under seal? A. No, sir.

"Q. Attested by the Corporation Commission? A. No, sir.

"Q. What record was that? A. State Bank Examiner's Report of 6 March, 1926, of the Bank of Midland.

"Q. What was the result of your investigation from the records of the bank and those of the State Department of the Corporation Commission in Raleigh? A. The net result of our audit from the records of this bank and from the information we received from the examiner's report, 5 March, showed a deficit of $1,395.71, and a shortage of $3,523.45."

From an adverse verdict and judgment rendered thereon the defendant appeals, assigning errors.

*Attorney-General Brummitt and Assistant Attorney-General Nash for the State.*

*J. C. M. Vann and Armfield, Sherrin & Barnhardt for defendant.*

STACY, C. J. The chief question presented by the appeal is the competency of the testimony of W. S. Coursey (above set out), with respect to the defendant's alleged shortage, the concealment of which, the State contends, was the motive for burning the building and destroying the records of the bank. Upon this evidence the State's case largely depends. That it is based in part on information obtained from the report of the State bank examiner is conceded, and its incompetency, on the ground of hearsay, is not seriously questioned.

As a general rule, hearsay evidence is not admissible in the trial of causes where substantive rights are involved. *S. v. Springs,* 184 N. C., 768, 114 S. E., 851. Hence, the courts will not ordinarily receive the testimony of a witness as to what some other person told him, as evidence of the existence of the fact asserted. *Roe v. Journegan,* 175 N. C., 261, 95 S. E., 495. "The narration of conversations correctly is the most difficult fact of memory and expression." Piffett's Succession, 37; Lee Ann., 871. Nor will a witness be permitted to testify to facts where his knowledge thereof is derived, in whole or in part, from the unsworn statements of others. *King v. Bynum,* 137 N. C., 491, 49 S. E., 955. "Evidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." 11 A. & E. (2 ed.), 520.

Speaking to the question in *S. v. Lassiter,* 191 N. C., 210, 131 S. E., 577, *Brogden, J.,* delivering the opinion of the Court, said: "The in-

herent vice of hearsay testimony consists in the fact that it derives its value not from the credibility of the witness himself, but depends upon the veracity and credibility of some other person from whom the witness got his information." This is the general rule supported by all the authorities on the subject. *S. v. Green,* 193 N. C., 302, 136 S. E., 729.

There are, of course, exceptions to this general rule excluding hearsay evidence, such as admissions, confessions, dying declarations, declarations against interest, ancient documents, declarations concerning matters of public interest, of pedigree, of prescription, of custom, and, in some cases, of boundary, and *pars res gestæ,* but the evidence we are now considering comes under none of them. *Mima Queen v. Hepburn,* 11 U. S., 290.

True the defendant, when he came to testify, was asked about the report of the State bank examiner, and two of the directors of the bank also gave evidence in regard to it, but this did not cure the original error, as the testimony of W. S. Coursey was the keystone in the arch of the State's case.

For the error, as indicated, there must be a new trial, and it is so ordered.

New trial.