ELLA C. THOMPSON AND VIRGINIA P. CIBOTTI v. STOKES BUCHANAN, MRS. BERTIE M. WILSON AND R. B. BUCHANAN.

(Filed 12 February, 1930.)

**1. Deeds and Conveyances D b—Competency of testimony as to declarations of boundaries of lands.**

Hearsay evidence of declarations of a decedent as to the location of certain lines and corners of a tract of land in order to be competent must be of declarations made *ante litem motam* by a declarant dead when the evidence is offered and disinterested at the time they were made.

**2. Same—Declaration of one who has parted with his interest in lands cannot be used to disparage title of those claiming under him.**

Where the owner of lands has parted with his title testimony as to his subsequent declarations against the interest of those claiming under him is incompetent, but where evidence of like nature, effect and character has been admitted without objection, exception to the admission of such evidence will not be sustained on appeal.

**3. Trial B c—Exception to evidence will not be sustained where like evidence had been admitted without objection.**

Exception to the admission of evidence will not be considered on appeal where it appears that evidence of like nature, effect and character had been previously admitted without objection.

**4. Deeds and Conveyances D b—Testimony of declarations of adjoining owner is admissible unless made in his own interest.**

Evidence of declarations of an adjoining owner of lands in dispute as to boundaries and corners is admissible unless made in his own interest, and under the facts of this appeal *held:* the reference to the matter under exception was too meagre upon which to award a new trial.

**5. Trial E g—Where the charge construed as a whole is correct it will not be held for error.**

Where the entire charge of the judge to the jury correctly gives the principles of law under the evidence so that a jury of intelligent men must have understood it, it will not be held for error on appeal.

CIVIL ACTION, before *Finley, J.,* at July Term, 1928, of MITCHELL.

A full statement of the facts is contained in the former appeal in this case, reported in 195 N. C., 155, 141 S. E., 580.

In the present trial the main controversy revolves about the question of the location of the beginning corner of the land in dispute, the plaintiffs contending that the beginning corner as shown on the map was "Walnut A." The defendants, upon the other hand, contended that the beginning point was "Walnut at point 1" on the map.

Two issues were submitted to the jury, as follows:

1. "Are the plaintiffs the owners of the land shown on the court map by the figures 1, 2, 3, 4, 5, 6, and back to 1?"

2. "Are the plaintiffs the owners of the lands shown on the court map by the letters A, B, C, D, E, F, and back to A, or any part thereof, except as stated in the first issue?"

The first issue was answered "yes" by consent, and the jury answered the second issue "no."

From judgment upon the verdict plaintiffs appealed.

*W. B. Councill* of counsel for *plaintiffs.*

*S. J. Black, W. C. Newland, S. J. Ervin,* and *S. J. Ervin, Jr.,* for *defendants.*

BROGDEN, J. 1. Are declarations of a deceased owner of land as to the beginning corner, made during the period of his ownership, competent against those claiming under him?

2. Are the declarations of such deceased owner, made after he had parted with his title, competent against those who claim under him?

It appears from the evidence that Pat Abernethy owned an interest in the land or a mineral interest in it up to 7 September, 1909, and that on that day he conveyed his interest to one of the plaintiffs. It does not appear when Abernethy acquired the interest. The defendants offered testimony to the effect that surveys of the land had been made

in 1922 and in 1924, and that Abernethy, now deceased, was present ·at the time of these surveys, and that he pointed out the corners of the Irby lease and stated that such corner was "a walnut standing on the bank of the road." The defendants further offered the declaration of Abernethy at the time of such survey, with respect to the walnut, as follows: "He said it looked natural; that it was standing right where it always was."

Another witness for defendants testified with reference to the walnut, as follows: "Yes, Mr. Pat Abernethy pointed it out to me at one time. I believe it was in the year 1918. I was out there. I got him to go with me the year after my wife's father died, as well as I recollect. It was up to me to kinder look after the property, and I got him to go with me and point out the boundary lines of that Hawk Mining tract, and we went up the ridge to a hole in the ground. I'asked him to go in front and point out to me where the corner was.' . . . He went and looked around a little and finally located that hole in the ground, figure 2, and told me that was the corner between the Heap and Clapp contention and the Burleson contention. He pointed out the oak that was marked there, he said in 1885, when they had a survey after they got up a dispute between the parties mining under Heap and Clapp and the parties mining under Burleson as to the location of the underground workings, and that he went after a surveyor, and it was one of the coldest days he ever saw in his life, and they got up there and surveyed to that point and then had an underground survey to determine where the workings were and that they marked that tree that was there as a more permanent mark, and that he took a memorandum of those marks and the distance from the chestnut stump and the shaft that was there, and that he had it at home in his safe, and that he would send it to me, but he never did." The witness was asked if he and Abernethy went down to the walnut tree claimed by the defendants as a beginning point of the Burleson lease and the Bowman deed. The witness answered: "Yes, we went on up there, and he looked around a little on the ground and said that corner was standing there then, above the road, the beginning corner, 1, as laid down on the map was the corner."

The plaintiffs objected to all the foregoing evidence. The objection was overruled and the plaintiffs excepted.

It appeared that Abernethy had conveyed his interest in the land to one of the plaintiffs in 1909, and that some of these declarations having been made in 1918, in 1922, and in 1924, were made after Abernethy had parted with his interest in the land. The general rule is stated in *Singleton v. Roebuck,* 178 N. C., 201, 100 S. E., 313, as follows: "It is the law in this State that under certain restrictions both hearsay evidence and common reputation are admissible on questions of private

boundary. . . . The restrictions on hearsay evidence of this char-
acter—declarations of an individual as to the location of certain lines and
corners—established by repeated decisions, are: That the declarations
be made *ante litem motam;* that the declarant be dead when they are
offered, and that he was disinterested when they were made." How-
ever, it was held in *Lumber Co. v. Lumber Co.,* 169 N. C., 80, 85 S. E.,
438, that: "It may be said that where the declarant has parted with his
interest, what he has afterwards said about lines and boundaries cannot
be used against those claiming under him to disparage their title. . . .
It may be added that the testimony of Bent Cook as to declarations of
Bryson was incompetent, as they were made after Bryson had disposed
of his interest, and would disparage those claiming under him. 16 Cyc.,
979." But the record shows the following entry: There was "testimony
on the part of witness, R. E. Wiseman, and of the witness, Fate Wilson,
that P. H. Abernethy had pointed out the lines and corners of the land
in controversy as the lines and corners thereof, which was admitted
without objection or exception prior to the objection and exception to the
testimony, which is the subject of the first, second, third, fifth and sixth
exceptions. There was also testimony to the same effect from another
witness, Robert Buchanan, tending to show, that in 1885, P. H. Aber-
nethy had pointed out the lines and corners of the land in controversy,
and there was no objection or exception to the admission of this evi-
dence."

The declarations of Abernethy in 1885, while he was the owner of an
interest in the land, would be competent against him and those claiming
under him. *Smith v. Moore,* 142 N. C., 277, 55 S. E., 275; *Roe v.
Journegan,* 175 N. C., 261, 95 S. E., 495; *Singleton v. Roebuck,* 178
N. C., 201, 100 S. E., 313; *Carr v. Bizzell,* 192 N. C., 212, 134 S. E.,
462. Moreover, if the declarations of Abernethy made subsequent to
1909 were incompetent, it clearly appears from the portion of the record
quoted above, that testimony of like nature, effect, and character had
been offered in evidence without objection. It has been repeatedly held
by this Court that if testimony of the same nature as that objected to,
is given by a witness in other portions of his testimony, without objec-
tion, that the exception thereto cannot be sustained. *Marshall v. Tel.
Co.,* 181 N. C., 410, 107 S. E., 498; *Shelton v. R. R.,* 193 N. C., 670, 139
S. E., 232; *Tilghman v. Hancock,* 196 N. C., 780, 147 S. E., 300.

The record further shows the following: "For the purpose of showing
that the white walnut, contended by the plaintiffs to be their corner, is
on the south side of the old Turnpike Road, was there in 1881, the de-
fendants offered a deed from Charles Burleson and wife to Elizabeth
Young, dated 19 December, 1881. Plaintiffs objected to the introduc-
tion of this deed. Objection overruled; plaintiffs excepted." Charles

Burleson was the grantor in the Bowman deed under which plaintiffs claim and was dead at the time of the trial. It does not appear from the record what the wording of the declaration in the deed was. Apparently it was the declaration of an adjoining owner. In *Sullivan v. Blount,* 165 N. C., 7, 80 S. E., 892, this Court held that: "The fact that the declarant owns an adjoining tract of land does not render the declarations incompetent, . . . unless made in his own interest." The record does not disclose that Burleson was claiming any interest in the land in controversy. Furthermore, there was testimony without objection, tending to show that the white walnut claimed by the plaintiffs as the beginning corner was on the south side of the Turnpike Road, and also that such beginning corner was the beginning corner of three tracts of land, and the purported declaration would apparently corroborate this testimony. At any rate, the meager reference does not convince us that the introduction of the deed was reversible error.

The plaintiffs contend that the instructions given by the trial judge to the jury were contradictory and misleading, particularly with reference to the location of the beginning corner of the land in controversy; but a careful reading of the entire charge leaves the impression that no man of ordinary intelligence could have failed to understand that the controversy between the parties as to the beginning corner was whether such corner was at the Walnut marked "A" on the map or at the Walnut marked "1."

Upon a careful review of the entire case, we are constrained to hold that no reversible error appears from the record, and the judgment is affirmed.

No error.