WALTER R. TEAGUE, AND ALL OTHERS, HEIRS AT LAW OF J. B. GRAHAM, DECEASED, WHO MAY DESIRE TO COME IN AND NAME THEMSELVES PARTIES, v. MAX C. WILSON, ADMINISTRATOR OF THE ESTATE OF J. B. GRAHAM, DECEASED.

(Filed 29 October, 1941.)

1. **Evidence § 41: Lost or Destroyed Instruments § 2—**

   Testimony of an illiterate witness as to the contents of the instrument in question as gathered by the witness from the reading of the instrument by another is hearsay and is incompetent to prove the contents of the alleged lost instrument.

2. **Descent and Distribution § 8—Evidence held insufficient to show written acknowledgment of paternity required by California statute in order for illegitimate child to inherit from its father.**

   Plaintiff, the illegitimate son of intestate, who died domiciled in California, instituted this action to establish his right to inherit as an heir of his father under the provisions of a California statute giving such right of inheritance if the father acknowledged paternity in writing. The only competent evidence as to the contents of the alleged lost writing acknowledging paternity was the testimony of a witness that he was present when plaintiff's father signed a note which he said was for plaintiff's mother "to go to pay for the boy." *Held:* The testimony is insufficient to show that the acknowledgment of paternity appeared in the writing itself as required by the California statute, Probate Code, sec. 255, and judgment as of nonsuit should have been entered.

APPEAL by defendant from *Sink, J.,* at May Term, 1941, of CALDWELL. Reversed.

Plaintiff, claiming an interest in the estate of J. B. Graham, filed petition asserting that he was the legal heir of R. S. Graham, son of J. B. Graham, and was therefore entitled to the share of R. S. Graham in the distribution of the estate. R. S. Graham died in 1940 pending the settlement of the estate of J. B. Graham.

Plaintiff alleged that he was the illegitimate son of R. S. Graham and Alice Teague; that he was born in 1898; that subsequently R. S. Graham

became a citizen and resident of California, and died domiciled in that state, leaving no widow or issue other than the plaintiff; that R. S. Graham, in his lifetime, acknowledged, in writing, in the presence of a competent witness, that he was the father of plaintiff, and thus constituted plaintiff his legal heir in accordance with the laws of California.

The material allegations of the petition were denied by the defendant. There was verdict for plaintiff, and from judgment thereon defendant appealed.

*Townsend & Townsend for plaintiff, appellee.*

*B. F. Williams, G. W. Klutz, Max C. Wilson, and Hal B. Adams for defendant, appellant.*

DEVIN, J. Passing over questions of parties and procedure, we think the defendant's motion for judgment of nonsuit, entered in apt time, should have been allowed, for lack of competent evidence to support the allegations in plaintiff's petition.

The plaintiff was born out of wedlock in Caldwell County, North Carolina, in 1898. His mother, still living in that county, is Alice Teague. There was evidence tending to show that R. S. Graham was his father, and that shortly after the birth of plaintiff R. S. Graham removed to and became a resident of the State of California, where he died domiciled. In order to establish his claim that he was the legal heir of R. S. Graham, plaintiff relied upon a statute of the State of California, section 255 of the Probate Code, which provides as follows: "Every illegitimate child is an heir of its mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father; and inherits his or her estate in whole or in part, as the case may be, in the same manner as if born in lawful wedlock." *Estate of Loyd,* 170 Cal., 85.

Plaintiff sought to show that R. S. Graham, shortly after plaintiff's birth, gave to Alice Teague a note for $30 which contained an acknowledgment in writing of his paternity. The note was not produced, and plaintiff offered evidence that the paper had been lost and could not after due diligence be found. Whether the evidence on this point was sufficient to lay the foundation for the introduction of secondary evidence need not be determined (Lockhart on Ev., sec. 24; *Justice v. Luther,* 94 N. C., 793, 20 Am. Jur., 394), as the parol evidence offered as to the contents of the paper was insufficient to establish plaintiff's claim under the California statute.

Plaintiff offered the testimony of Alice Teague, who could not read or write. She testified she heard one Harmon Smith read what was in the note "that Robert Graham was paying for his son Walter Teague."

This evidence, to which objection and exception were duly noted, was hearsay and incompetent. Smith did not testify. "Evidence, oral or written, is called hearsay when its probative force depends, in whole or in part, upon the competency and credibility of some person other than the witness by whom it is sought to produce it." *King v. Bynum,* 137 N. C., 491, 49 S. E., 955; *S. v. Blakeney,* 194 N. C., 651, 140 S. E., 433; *Greene v. Carroll,* 205 N. C., 459 (462), 171 S. E., 627; 20 Am. Jur., 403.

Plaintiff offered another witness, Shell, who also could not read or write, who testified that forty-two years ago he saw R. S. Graham and Smith sign a note which Graham said "was for Alice Teague. . . . He wanted Mr. Smith to sign this note for Alice Teague to go to pay for the boy." There was no other evidence of the contents of the paper.

In *Blythe v. Ayres,* 95 Cal., 532, it was said that the statute did not require the acknowledgment be in any precise or set form of words. However, the consensus of judicial opinion is to the effect that it must appear from the writing itself, or from competent evidence of its contents when lost, that there was a clear and unequivocal acknowledgment in writing of the paternity of the illegitimate child by the father. L. R. A. 1916 E, 659; 7 Am. Jur., 664; 7 C. J., 950; 10 C. J. S., 54.

The evidence offered by plaintiff falls short of the requirements of the California statute necessary to constitute him the heir of his putative father, and the motion for judgment of nonsuit should have been allowed.

Reversed.