**IN RE ESTATE OF ROBERT HORNE, deceased. IN THE MATTER OF THE CLAIM OF VERA LOUISE HORNE.**

7 So. (2nd) 13                                           Division A
March 17, 1942                        Rehearing Denied April 2, 1942

C. D. Abbott, Kearley & White, for Appellant Minnie Horne Terrell, and Sidney J. Catts, Jr., for Appellant

Florida Bank & Trust Company and Minnie Horne Terrell as Administrators of the Horne Estate.

E. M. Baynes, for appellee.

BUFORD, J.:

Chapter 16103, Acts of 1933, bears the following title:

"An Act Relating to Wills and the Probate Thereof, to Descent and Distribution of Decedents' Estates. To Dower, to the Administration of Decedents' Estates and the Practice and Procedure Relating Thereto, to County Judges and Their Jurisdiction in Probate and Administration and to Appellate Procedure Relating Thereto, to Revise and Consolidate the Law Relating to the Estates of Decedents and to Repeal all Laws and Statutes in Conflict Herewith."

Section 30 of this Act reads:

"Section 30. Illegitimates.—Every illegitimate child is an heir of his mother, and also the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father; such illegitimate child shall inherit from its mother and also from its father when so recognized, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents shall have intermarried, in which event such illegitimate child shall be deemed legitimate for all purposes.

Vera Louise Horne was the illegitimate daughter of Robert Horne and had been so recognized by Robert Horne and others acquainted with her since her birth. Some five or six years before the death of Robert

Horne Vera Louise (generally known as Louise Horne) made her home with him as his recognized daughter. Robert Horne supported and educated Louise and in 1938 had placed her in Talladega College at Talladega, Ala. On April 20, 1938, he wrote and signed in the presence of witnesses a letter, as follows:

"Robert Horne
800 15th St.,
West Palm Beach, Fla.
April 20, 1938.

"Mr. M. B. Miller, Registrar
Talladega College,
Talladega, Ala.

"In Re Vera Horne

"Dear Sir:

"This is to acknowledge receipt of the most recent of my Daughter's report cards.

"Beg to advise that I am not at all satisfied with same.

"The matter of her being delinquent in one of her courses is not so serious in my opinion, but the number of unexplained absences is a far different thing.

"I would highly appreciate your cooperation in reducing the number of her cuts, and, if possible, would like to know the reason for them.

"I am enclosing a stamped and addressed envelope for your reply.

"Thanking you in advance, I am

"Yours very truly,
(Signed) 'Robert Horne' "

On May 10, 1939, when Louise was in Talladega College, Robert wrote and signed, in the presence of witnesses, another letter, as follows:

"Robert Horne
800 15th St.,
West Palm Beach, Fla.
May 10th 1939.

"Mr. M. B. Miller,
Talladega College,
Talladega, Ala.

"Dear Sir:

"In pursuance of our telephone conversation on the night of May 9th, I am herewith sending you $700.00 to be applied as follows: $612.00 to cover tuition, etc., for my Daughter Louise Horne for the years 1939 and 1940, and 1940 and 1941 to be held by Talladega College and applied as necessary.

"The balance of $88.00 to be given her in small amounts from time to time at the discretion of School Officials. Please send official receipt for same at your earliest convenience.

"Yours very truly,
(signed)  Robert Horne."

The record shows that the $700.00 referred to in the latter letter was enclosed with the letter and was applied as therein directed.

Robert Horne died intestate in West Palm Beach, Florida, in March, 1940, leaving surviving him his widow, Minnie Horne, and the daughter Vera Louise, who was then twenty-one years of age.

Minnie Horne and Florida Bank & Trust Company at West Palm Beach were appointed co-administrators

of the estate of Robert Horne, deceased. During the progress of the administration of the estate Florida Bank & Trust Company at West Palm Beach as a co-administrator, filed a petition in the Probate Court under the provisions of Sec. 182 of the Probate Act, supra, for determination and adjudication of beneficiaries of the Estate of Robert Horne. The petition, inter alia, alleged:

"that petitioner has made diligent search and inquiry to determine who are entitled to inherit from such estate and to the best information, knowledge and belief, so far as ascertainable by petitioner, all persons in interest or claiming any interest in the above estate are as follows, to-wit: 'Minnie Horne, who has designated her address as 800 15th Street, West Palm Beach, Florida, who claims to be the wife of the above named deceased. 'Vera Louise, who has designated herein her address as care of E. M. Baynes, 803 Comeau Building, West Palm Beach, Florida, who claims to be a daughter of the above named deceased.'"

Vera Louise Horne answered the petition alleging that she was the daughter of Marzella Barker and Robert Horne, having been born out of wedlock August 19, 1918, and that during the lifetime of Robert Horne he had, in the presence of competent witnesses, acknowledged in writing that she was his daughter and that he was her father; and she claimed that thus she was a lawful heir of Robert Horne.

After taking testimony presented by the parties, the county judge entered his order and judgment inter alia, as follows:

"That Vera Louise Horne is the illegitimate child of Robert Horne, deceased, who, in writing, signed in the presence of a competent witness, acknowledged him-

self to be the father of the said Vera Louise Horne; that the said Vera Louise Horne is entitled to participate and share in the estate of Robert Horne, deceased, in the same manner as if she had been born in lawful wedlock. In consideration thereof

"It is Ordered and Adjudged that the said Vera Louise Horne is entitled to share and participate in the property, both real, personal and mixed, of the said Robert Horne, deceased, in the same manner as if she had been born in lawful wedlock and is entitled to receive one-half thereof."

From this order appeal was taken to the circuit court and, on consideration thereof, the circuit court entered its order, as follows:

"This cause was duly presented by counsel for the parties upon an appeal from an order of the county judge's court, entered August 12, 1941.

"Two questions were presented to the county judge in the entry of the order of August 12, 1941, upon the petition filed in the county judge's court November 30, 1940. The first question was whether Vera Louise Horne was an illegitimate child of Robert Horne. The second question was, whether Robert Horne was one 'who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father' of Vera Louise Horne.

"As to the first question, the proof is ample and convincing. The petitioner was an illegitimate child of Robert Horne, generally and notoriously recognized by him as such.

"As to the second question, under the Common Law, an illegitimate child could not inherit from anyone. Under Section 5480, Compiled General Laws (1927), she could inherit only from her mother. But, this was

changed by Section 30 of the Probate Act. The effect of this last statute is to permit an illegitimate child to also inherit from her father when the father, in writing, signed in the presence of a competent witness, acknowledges himself to be the father.

"The statute was adopted from a California law on the same subject. California had laid down the rule in *Blythe v. Ayres*, (1892) 96 Calif. 532, 19 L.R.A. 40, 31 Pac. 915, and in later cases, to the effect that this statute must be liberally construed.

"However, earlier California decisions, based upon the same statute, held that this statute should be strictly construed. *In re Sanford Estate*, (1854) 4 Calif. 12, *Pina v. Peck*, (1866) 31 Cal. 359. After these two decisions, and prior to the decision of *Blythe v. Ayres*, supra, California enacted a Code, which appears to be one of the compelling reasons for the different rule as laid down in *Blythe v. Ayres*, and apparently followed by the County Judge in this case.

"So, we have the situation of an identical statute in California and in Florida. The early California decisions required a strict construction of the Act. Then California enacted a Code, and thereafter the Supreme Court of California held that the identical statute should be liberally construed. Many years after this last California decision, Florida adopted its statute on the subject, known as Section 30 of The Probate Act.

"Appellant contends that in Florida, where there is no code or statute requiring that this Section 30 of The Probate Act be liberally construed, the Court should follow the early California decisions, based upon the law as it existed there at that time, and the statute as it now exists here.

"It is my conclusion, however, that when Florida adopted The Probate Act in 1933, it had in mind the California Act, in the light of its latest interpretation by the highest court of that state. Florida was not concerned with the reasons which brought about the latest interpretation of the Act as enunciated in *Blythe v. Ayres*. Therefore, this court conceives it to be its duty to find that Florida, in effect, adopted the decision of *Blythe v. Ayres,* supra, when it adopted Section 30 of The Probate Act. If this theory is correct— as I believe it to be—then the judgment should be affirmed—otherwise, the legal effect of the whole evidence in this case would require its reversal, and a dismissal of the Petition. Thereupon, it is ordered and adjudged that the Order of the County Judge, entered August 12, 1941, be affirmed, with costs, including the costs of this appeal and any other or further appeal, paid by the Estate of Robert Horne, deceased."

From this Order, the appeal was prosecuted to this Court.

There are some conflicts in the evidence, but the weight and preponderance thereof establish the facts as above stated. The only conflicts are as to whether or no Robert Horne signed the letters as shown, supra. A handwriting expert testified that in his opinion Robert Horne did not sign the letter with which the $700.00 was transmitted and that the words appearing in the caption of the letter of April 20, 1938, viz.: "In re Vera Horne" were not typewritten there with the same machine insertion under which the remainder of the letter was written. Eye witness testified to the contrary and the county judge and the circuit judge held the facts established by the latter testi-

mony. The surrounding facts and circumstances amply justify the conclusion reached.

We are to determine whether or not the title to the Probate Act, supra, was sufficient to warrant the inclusion of Section 30 in the Act, under the provisions of Sec. 16, Article III of our Constitution, which is as follows:

"Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only, but in such case the Act, as revised, or section, as amended, shall be re-enacted and published at length."

If this question be answered in the affirmative, we are then to determine whether or not the writings signed by Robert Horne in the presence of competent witnesses were sufficient to comply with the provisions of Section 30, supra, so as to give Vera Louise Horne the status of an heir of Robert Horne, deceased.

We have no hesitancy in holding that the provisions of Sec. 30, supra, are clearly within the purview of the title of the Act. Section 30 clearly relates to "descent and distribution of decedents' estates."

It is not every letter signed by the acknowledging father in the presence of a competent witness which will meet the requirements of the statute and, therefore, some doubt may be entertained as to the sufficiency of the letter of April 20, 1938, supra; but where a letter is written by the father to a third person and signed in the presence of one or more competent witnesses not only acknowledging the relationship of father and child but also acknowledging the responsibility as father to the child and also performing

the duties growing out of that responsibility by therewith and thereby providing a substantial sum of money to cover the requirements for support and maintenance of the child, such letter should be construed as a formal acknowledgment of parenthood.

The difference between factual conditions in this case and those shown to exist in cases cited pro and con make those cases of little value here and, therefore, we do not cite or comment on them. It is to be noted that the statute does not require any formal execution of the writing. It does not require *subscribing witnesses*. It requires no acknowedgment before an officer, nor does it require any recording of the writing. The statute contemplates an informal writing.

We hold that a letter such as that of May 10, 1939, supra, signed by the father in the presence of competent witnesses, acknowledging the child as his daughter, recognizing the responsibility of a father for the care and maintenance of the child, and discharging that responsibility by transmitting the necessary money for such purpose, satisfies the provisions of Section 30, supra, and that the Order and Judgment appealed from is without error. So the same is affirmed.

So ordered.

BROWN, C. J., WHITFIELD and ADAMS, JJ., concur.