**IN RE: ESTATE OF ELLIOTT RUFF, WILLIE RUFF, JR., v. ALAINE RUFF BRAYNON and ELLIOTT RUFF, JR.**

32 So. (2nd) 840                                    June Term, 1947
December 9, 1947                                          En Banc

*Redfearn & Ferrell,* for appellant.
*Daisy Richards,* for appellees.
CHAPMAN, J.:

On February 15, 1946, Alaine Ruff Braynon and Elliott Ruff, Jr., by petition represented to the the County Judge's Court of Dade County, Florida (1) that Elliott Ruff died intestate at Miami, Florida, on January 30, 1946, age 64, and a resident of Dade County; (2) that Elliott Ruff left surviving heirs at law (a) Alaine Ruff Braynon, daughter, 37 years of age; and (b) Elliott Ruff, Jr., a son, 38 years of age; (3) that the deceased was seized and possessed at the time of his death of a certain estate of the approximate or estimated value of $15,000.00; (4) that Alaine Ruff Braynon and Elliott Ruff, Jr., the petitioners, are the heirs of Elliott Ruff, deceased. The petition prayed for the appointment of an administrator of the estate by the Court. Subsequently the petition was amended by alleging that Matilda Ruff Cunningham, mother of the petitioners, and former wife of the deceased, was an heir of the decedent.

On February 22, 1946, Willie Ruff, Jr., filed in the County Judge's Court a response to the aforesaid petition and admitted the allegations of paragraphs one and three of the petition of Alaine Ruff Braynon and Elliott Ruff, Jr., but denied the allegations of paragraphs two and four. The respondent represented that he was the nephew of Elliott Ruff, deceased, and he and other named parties were the sole and only heirs of the deceased and objected to the appointment by the Court of Alaine Ruff Braynon as administratrix of the Elliott Ruff estate and prayed that the Court here evidence and adjudicate the heirs and determine thereby the ownership of the Elliott Ruff estate.

Considerable testimony was adduced by the parties on the aforesaid issues and on December 3, 1946, the Honorable W. F. Blanton entered an order to the effect that Elliott Ruff, Jr., and Alaine Ruff Braynon were the children of Elliott Ruff, deceased, and under the law of descent and distribution of

Florida were the lawful owners of all property seized and possessed by the deceased. From this order an appeal was perfected to and affirmed by the Circuit Court of Dade County, Florida. An appeal from the order of affirmance has been perfected to this court.

Elliott Ruff and Matilda Taylor began associating together in 1905 or 1906, when Matilda was 16 or 17 years of age, and on June 6, 1907, she gave birth to a son (a party to this suit) whom they named Elliott Ruff, Jr. The parties continued their cohabitation together and Elliott Ruff and Matilda Taylor were married by the County Judge of Dade County on September 8, 1908. On January 3, 1909, Matilda Taylor Ruff gave birth to a second child, whom they named Alaine Ruff.

On February 3, 1909, Elliott Ruff filed suit in the Circuit Court of Dade County for annulment of their marriage and on the 4th day of September, 1909, the same was granted by Minor S. Jones, Circuit Judge, as follows:

"This cause coming on to be heard before me upon the bill of complaint and the Master's Report and the Court being advised in the premises, and the Master having reported that the equities of the Bill are with the complaint, it is therefore ordered, adjudged and agreed that the said Master's Report be and the same is hereby in all respects affirmed.

"It is further ordered, adjudged and decreed by the Court that the said marriage ceremony performed on the 8th day of September, 1908, and said marriage contract so alleged to have been entered into between the complainant, Elliott Ruff, and the defendant, Matilda Ruff, be and the same is hereby annulled and declared to be void and of no effect, and all of the rights and privileges of an unmarried person is hereby restored to the parties.

"Done and ordered at chambers at Titusville, Florida, this the 4th day of September, A. D., 1909.

"Minor S. Jones, Judge."

Thus we have it: That the parents married after the birth of their son, Elliott Ruff, Jr., and four months before the birth of their daughter, Alaine Ruff; that a month after the birth of Alaine Ruff the father brought suit for and procured a decree

of annulment of the marriage, wherein the mother neither appeared nor answered.

Elliott Ruff in his suit charged that he had been forced to marry Matilda Taylor under threats of prosecution and violence. Matilda Taylor Ruff did not contest the suit and a decree pro confesso was entered against her and the allegations of the bill of complaint praying for an annulment of the marriage are shown to have been established only by the testimony of Elliott Ruff, now deceased.

It is established by the record and has been judicially determined that Elliott Ruff, Sr., was the father of appellees and treated them as his children until the time of his death, January 30, 1946.

The legitimacy of the children is raised by the collateral heirs of the deceased, with the knowledge that they cannot inherit the estate if children of the deceased survive.

Section 734.25, Fla. Stats. 1941 (FSA) (Chapter 22783, Acts of 1945, Laws of Florida), confers the jurisdiction of County Judge's Courts to determine the questions of who are the distributees, legatees or beneficiaries of property of a decedent and the amount and shares to which each may be entitled. Rahming v. Mackey, 136 Fla. 713, 187 So. 579; Cone v. Benjamin, 157 Fla. 800, 27 So. (2nd) 90.

The questions for decision may be considered together and, as modified, are as follows:

Question I: Is Elliott, who was born out of wedlock, an heir of Ruff, Sr., his father, who subsequent to Elliott's birth entered into a marriage with his mother, procured a decree of annulment of said marriage, and never acknowledged in writing that he was the father of said illegitimate.

Question II. Is Alaine, who was conceived out of wedlock and born three months and twenty-six days after a marriage ceremony between her father, Elliott, and her mother, an heir of the father, who thereafter procured a decree of annulment of said marriage and never acknowledged in writing that he was the father of Alaine?

It is contended that the decree of annulment dated September 4, 1909, which set aside, annulled and held void ab initio the marriage entered into on September 8, 1908, between

Elliott Ruff and Matilda A. Taylor, regardless of the duration thereof, was retrospective in its legal operation and thereby rendered Alaine Ruff Braynor and Elliott Ruff, Jr., illegitimates. Many authorities are cited by counsel to sustain this view. Elliott Ruff, Jr., and Alaine Ruff Braynon were not made parties to the annulment suit, although it is asserted that their legitimacy flowing from the marriage of their parents was dissolved in the annulment proceedings. The marriage was not void, but only voidable, and the decree of annulment was effective as of the time when entered, and not ab initio.

The case of Jones v. Jones, 119 Fla. 824, 161 So. 836, involved an annulment of a voidable marriage by court decree and the legitimacy of a child born to the voidable marriage. It was contended that the annulment decree rendered the child an illegitimate, but we fail to find merit in such contention. We held contrary to the contention and in part said (text 119 Fla. 832):

"The annulment of the now existing *voidable* common law marriage status cannot bastardize the child, Charlotte May Jones, who was born prior to any decree of annulment, since the judicial decree setting aside a merely voidable marriage status does not operate retrospectively as against the legitimacy of children born to the parties where such children would have been considered legitimate under the annulled voidable common law marriage prior to any decree of dissolution of same, had such annulment decree never been rendered. See authorities hereinbefore cited. Section 5880 C.G.L. 3961 R.G.S."

Section 731.29, F.S.A., provides:

"ILLEGITIMATES.—Every illegitimate child is an heir of his mother, and also the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father; such illegitimate child shall inherit from its mother and also from its father when so recognized, in the same manner if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents shall

have inter-married, *in which event such illigitimate child shall be deemed legitimate for all purposes.* (Italics ours).

The statute supra was in force and effect in Florida on January 30, 1946, when Elliott Ruff died. The right of a child to inherit property through its father does not commence until after the death of the father and consequently all such rights will be governed by the statutes then existing. 7 Am. Jur. 723, par. 151.

The case of In re: Horne's Estate, 149 Fla. 710, 7 So. (2nd) 13, involved the right of an illegitimate to inherit through her father under Section 731.29 supra. The illegitimate's answer disclosed that she was born out of wedlock on August 19, 1918, and her father died intestate in 1940. The father's letter dated May 10, 1939, over his signature, written to an Alabama college about his daughter's progress in school, was legally sufficient to meet the requirements of paternity of the illegitimate under the above Section.

The Legislature, in the enactment of every statute, must be presumed to have entertained some intent, and any ambiguity or uncertainty of such intent should receive the interpretation that best accords with the public benefit. Many states have enacted laws providing for the legitimation of illegitimates by the subseqent marriages of their parents. See 7 Am. Jur., 660.665.

In construing the last clause of the Section as underscored, the question arises as to whether the words "such illegitimate child" make reference to "every illegitimate child" whose parents marry, or does it have reference only to the illegitimate child whose parents marry and whose father has so acknowledged his paternity in writing?

If the underscored words had been omitted, an illegitimate child would inherit from the mother and from the father who had so acknowledged his paternity in writing, but not from collateral and lineal kindred of his mother or such father unless such parents marry. Marriage of the mother and the father so acknowledging in writing made such illegitimate an heir at law for all purposes.

The question here is: What is the effect when marriage occurs without the prescribed acknowledgment in writing, and

do the underscored words of the quoted statute make the ante-nuptial child of the marrying parents legitimate for all purposes?

We must gather the intent from the statute by considering the language used, the subject matter, and the purpose.

Children born in wedlock are presumed to be legitimate, and the presumption has not been overcome in this case as to Alaine. (See 7 Am. Jur. 656 par. 45). It is our conclusion that it was the intent and purpose of Section 731.29, supra, to provide that the marriage of the parents of antenuptial children would legitimate them for all purposes, which in this case resulted in the legitimation of Elliott. (See 7 Am. Jur., p. 665, para. 58).

Affirmed.

THOMAS, C. J., TERRELL, ADAMS and BARNS, JJ., concur.

BUFORD and SEBRING, JJ., dissent.

BUFORD, J., dissenting:

I think the older child, born out of wedlock and not having been acknowledged in writing by deceased as his son, does not inherit.

SEBRING, J., concurs.