ROBERTS, Justice.
This is an appeal from an order of a circuit court affirming an order of a probate court finding that the appellee, Kenneth McCollum, is entitled to share in the estate of Samuel McCollum, deceased, as the illegitimate son of the deceased. The appel-lee’s claim is based on the provision of Section 731.29, Fla.Stat.19SS, F.S.A., declaring that an illegitimate child is the heir of his mother and “also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father.”
In support of his claim under the statute, the appellee offered and the trial judge admitted in evidence oral testimony concerning a letter purportedly written by the deceased to the appellee, which was said to have contained the salutation “Dear Son,” or “My dear Son,” and to have been signed “Your Father, Sam McCollum.” The letter was not introduced in evidence for reasons hereafter explained. It is first contended on behalf of the appellants, who are the lawful heirs of the deceased, that it was *539 essential to the pleading and proof of ap-pellee’s claim that the written acknowledgment of paternity be filed in the cause— either the original, or a copy thereof after it had been re-established in the Circuit Court in accordance with the requirements of Chapter 71, Fla.Stat.19S5, F.S.A., relating to the re-establishment of lost instruments.
This contention cannot be sustained. While the question was not presented in In re Horne’s Estate, 149 Fla. 710, 7 So.2d 13, which is the leading case in this state construing Section 731.29, supra, the clear import of that opinion is that the statute simply requires a particular evi-dentiary fact (that is, an acknowledgment of paternity in writing) as one of the prerequisites to establishing a claim of heirship to a putative father’s estate. See also Wall v. Altobello, Fla.1950, 49 So.2d 532. As shown in those cases, the claimant under the statute is required to prove three things: (1) the fact of paternity, and (2) the fact of written acknowledgment of paternity, and (3) in the presence of a competent witness, all equally essential to the establishment of a claim thereunder. Counsel for appellants has cited no case holding that the fact of written acknowledgment of paternity can not be shown by secondary evidence when the best evidence (the written acknowledgment itself) has been lost or destroyed, as in the case of other lost writings. We have noted, however, that the courts of other jurisdictions have considered secondary evidence of such a lost writing under statutes similar to ours, cf. Lind v. Burke, 56 Neb. 785, 77 N.W. 444; Moore v. Flack, 77 Neb. 52, 108 N.W. 143; Burns v. Lawson, 188 Old. 181, 107 P.2d 555; Watson v. Richardson, 110 Iowa 673, SO N.W. 407, although it might also be noted, parenthetically, that in none of these cases did the claimant succeed in establishing his claim. And it was stated in Teague v. Wilson, 1941, 220 N.C. 241, 17 S.E.2d 9, 10, that “the consensus of judicial opinion is to the effect that it must appear from the writing itself, or from competent evidence of its contents when lost, that there was a clear and unequivocal acknowledgment in writing of the paternity of the illegitimate child by the father.” (Emphasis added.)
We hold, therefore, under the authority of In re Horne’s Estate, supra, and the other cases above cited, that the fact of written acknowledgment of paternity may be established by secondary evidence under the general rules relating to the admissibility of secondary evidence of lost or destroyed writings.
This brings us to the next contention of the appellants, that is, that the ap-pellee’s explanation of the circumstances under which the letter was destroyed was insufficient to justify the admission of secondary evidence of its contents, and that the trial judge erred in doing so. The rule here, as stated in 32 C.J.S., Evidence, § 824, p. 752, is that
“Where it appears that a party seeking to establish a fact has voluntarily destroyed a writing constituting or containing the best evidence of that fact, he cannot introduce secondary evidence thereof, especially where the suit is in his own behalf and is founded on the writing, without first introducing evidence to explain his destruction of the writing and to repel all inference of fraudulent design arising therefrom. If, however, it appears that the loss or destruction occurred through accident or mistake, or on an erroneous impression of its effect, or under other circumstances free from a suspicion of intended fraud, there is no impediment to the introduction of secondary evidence.”
The letter relied upon by appellee as “written acknowledgment of paternity” under the statute was purportedly written to the appellee by the deceased at a time when appellee was a student in college, and some two or three years before the death of deceased. The appellee testified that he kept all his letters and other papers in a suitcase and from time to time would clean out the suit case and throw everything away, and that this letter had been destroyed during such a periodic cleaning. Fie did, how *540 ever, place in evidence the envelope in which the letter was allegedy enclosed and mailed to him by the deceased but offered no explanation as to why he saved the envelope and destroyed the letter.
There is some doubt in our minds as to whether in these circumstances the appel-lee’s explanation' was adequate, but we do not decide the question since the order must be reversed for a reason hereinafter explained.
The envelope was placed in evidence as a basis for the testimony of one Hall, whose role in the case was that of the “competent witness” in whose presence the written acknowledgment of paternity was purportedly made. Hall testified that he was a close friend,and business associate of the deceased; that “several” times the deceased had written to the appellee and used Hall’s name and address as the return address on the envelope; that the appellee would write to the deceased and enclose the letter in an outer envelope addressed to the witness Hall, with the inner envelope marked “Give to Dad”; that this was done because the deceased did not want his wife to see the letters from the appellee. As to the particular letter here relied upon as compliance with the statute, Hall testified that the deceased sat at a desk in his (Hall’s) office and wrote it, placed it in an envelope and wrote the appellee’s address on it, (or vice versa, he could not remember which) and then gave it to Hall; then Hall wrote his own name and address in the upper left hand corner of the envelope for the return address. Hall said he was in and out of the room while the deceased was writing the letter and that the deceased signed it “in his presence.” He testified that the letter began “Dear son,” or “My dear son,” and was signed, “Your father, Sam McCollum.” His “recollection” of the contents of the letter was to the effect that the deceased was sending appellee some money for clothes and wanted him to come and live on the farm and that he would come to see him as soon as he could. He did not testify that the deceased exhibited the letter to him either while he was writing it or after he had signed it, nor did he indicate how he knew that the letter began “Dear son” and ended “Your father,” nor how he gained hi9 knowledge of the contents of the letter.
It was also shown that, at a previous trial, in response to the question “You did say, did you not, that Sam McCollum would write Kenneth McCollum many times as his son?”, Hall answered, “I said he would write him, I said he would write Kenneth an ordinary letter. I did not see him write Kenneth as his son.” At that time he was also asked the question, “You never did see him write Kenneth McCollum as his son ?”, and he replied, “It was that way. It was just by word of mouth, I never said it was written. He told me, and lots of people, Kenneth was his son by word of mouth, that’s all.”
This court is committed to the rule that an informal -writing in the presence of a competent witness is all that is required by the statute in question — that is, that a formal written acknowledgment of paternity, in so many words, subscribed to by the witness in whose presence it was signed, is not necessary. In re Horne’s Estate, supra, 7 So.2d 13; Wall v. Altobel-lo, supra, 49 So.2d 532. Where the written acknowledgment relied upon is introduced in evidence, it is sufficient if it directly, unequivocally and unquestionably acknowledges the paternity of the illegitimate child, in such terms and under such circumstances as may “be construed as a formal acknowledgment of parenthood.” In re Horne’s Estate, supra, 7 So.2d 13, 16. And where the writing relied upon is not introduced in evidence but is sought to be proved by secondary evidence, we think the evidence should be of the same character; it should be so clear, strong and unequivocal as to remove every reasonable doubt as to the existence of the writing relied upon, its contents, and its signing in the presence of a competent witness. This is the rule applicable to the establishment of constructive trusts by parol evidence, Lightfoot v. Rogers, Fla., 54 So.2d 237, and we think it is the rule that should be applied in the situation here.
*541 There can bé no doubt that the evidence adduced by the appellee in support of his claim of an acknowledgment of paternity in writing by the deceased, does not meet this test. In addition to the fact that Hall’s testimony at the second trial is not, to our minds, clear and convincing, there is also the fact that his testimony at the first trial is somewhat at odds with that given at the second trial. Moreover, there is a complete lack of evidence as to just how the letter was signed “in the presence of” Hall; and we think the requirement of the statute that the written acknowledgment be signed “in the presence of a competent witness” means, at least, that the putative father must be conscious of the fact that the writing relied upon as a declaration of paternity is being made “in the presence of”, meaning to the knowledge of, the person in whose presence it was inscribed. We pass over the contention that Hall’s credibility is questionable, in view of his admittedly unlawful business activities, but note that there is some merit to the contention that he was not a completely disinterested witness. Wé are also troubled by the fact, still unexplained, that the appellee admittedly destroyed the deceased’s letter acknowledging paternity but preserved intact the seemingly worthless envelope in which it was said to have been mailed.
In these circumstances, it must be held that the probate judge misapprehended the legal effect of the evidence adduced before him as to the written acknowledgment of paternity and that the evidence was insufficient under the rule cited above. And since written' acknowledgment of paternity in the presence of a competent witness is the sine qua non of heirship under the statute, it is of no avail to the appellee that the evidence was ample to show that he was, in fact, the illegitimate son of the deceased.
For the reasons stated, the .order appealed from should be and it is hereby
Reversed.
DREW, C. J., and THOMAS and O’CONNELL, JJ., concur.