247 So.2d 1 (1971)
In re ESTATE of Hortense CALDWELL, Deceased.
Maude COMER, Ethel Jackson, and Eva M. Right, Appellants,
v.
Edith CALDWELL, Howard Caldwell, Eunice Caldwell, and Ethel Caldwell, Appellees.
No. 39562.
Supreme Court of Florida.
March 31, 1971.
*2 Cunningham & Cunningham, West Palm Beach, Stenstrom, Davis & McIntosh, Sanford, and Harold L. Braynon, of Matthews, Braynon & Mapp, Miami, for appellants.
Joe N. Unger, of Smith, Mandler, Smith & Parker, Miami Beach, for appellees.
CARLTON, Justice.
This is a probate matter featuring an inheritance dispute between legitimate and illegitimate collaterals of the deceased, Hortense Caldwell. Appellants, who represent the legitimate collaterals, have directly appealed from an "Order Determining Heirs" issued by the County Judge's Court, Dade County, in which Fla. Stat. § 731.29, F.S.A. was declared unconstitutional.
"[I]n that the same unjustly and unlawfully discriminates against illegitimate next of kin prohibiting them from enjoying the same rights as legitimate next of kin of the same class in violation of Section 1 of the Fourteenth Amendment to the Constitution of the United States and the Constitution of the State of Florida."
Hortense Caldwell was the only child resulting from the marriage of Henry and Parthenia Caldwell. She did not marry, and when she died, she left no descendants. Her parents predeceased her. Hortense did leave behind her several surviving relatives of collateral consanguinity; these were all descendants of deceased brothers and sisters of Henry and Parthenia, Hortense's parents. Under Fla. Stat. § 731.23, F.S.A., the intestate succession statute, these surviving relatives were entitled to the estate, if no other lawful heirs existed.
But lawful relatives were not the only relatives to survive Hortense. While married to Pathenia, Hortense's father cohabited with two other women, producing in the process four children out of wedlock: with Minnie White, Henry begot Ethel Caldwell; with Louise Young, Henry begot Edith, Eunice and Howard Caldwell. Howard, Edith and Eunice were formally recognized by Henry as his children; Ethel was not formally recognized, but the litigants here have accepted her as being a child of Henry. These four children were half-brother and half-sisters to Hortense, respectively. Having survived her, they would take under the intestate statute to the exclusion of other surviving collaterals, were they not illegitimate.
The County Judge ruled that Fla. Stat. § 731.29, F.S.A., unconstitutionally deprived illegitimate children of the equal protection of the law since they were equal in all respects to legitimate children, except that they were offspring of unmarried parents. For precedential guidance, the Judge relied upon Levy v. Louisiana, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968), and upon In re Estate of Jensen, 162 N.W.2d 861 (N.D. 1968), which was decided in part upon the principles announced in Levy.
The Levy case involved a Louisiana Wrongful Death statute, La. Civ. Code Ann. Art. 2315 (Supp. 1967), which the courts of that State interpreted as being available as a remedy only to legitimate children of a deceased. See Levy v. State, 192 So.2d 193 (La. App. 1966); certiorari was denied by the Supreme Court of Louisiana, 250 La. 25, 193 So.2d 530 (1967). On direct appeal, the Supreme Court of the United States held that to deny a right of recovery under the Wrongful Death statute to illegitimate children would create an invidious discrimination contravening the Equal Protection *3 Clause of the Fourteenth Amendment of the Federal Constitution, since the status of birth had no relationship to the nature of the wrong allegedly inflicted on the mother. In a companion case, Glona v. American Guarantee Co., 391 U.S. 73, 88 S.Ct. 1515, 20 L.Ed.2d 441 (1968), the Court also held that the mother of an illegitimate son could not be denied a remedy under the same Louisiana Wrongful Death statute when it was the son that was killed. In the Estate of Jensen case, supra, the Supreme Court of North Dakota held that the Levy rationale applied to the question of inheritance by illegitimates; N.D.C.C. § 56-01-05, similar in anguage to Fla. Stat. § 731.29, F.S.A., was declared unconstitutional under both the North Dakota and the United States Constitution.
When an appellate court has occasion to pass upon the validity of a statute after a trial court has found it to be unconstitutional, the statute is favored with a presumption of constitutionality. This is an exception to the rule that a trial court's judgment is presumptively valid. Moreover, all reasonable doubts as to the validity of statutes under the Constitution are to be resolved in favor of constitutionality. Capelouto v. Orkin Exterminating Co. of Florida, 183 So.2d 532 (Fla. 1966); Kass v. Lewin, 104 So.2d 572 (Fla. 1958); Waybright v. Duval County, 142 Fla. 875, 196 So. 430 (1940).
We do not find in this case that there has been a demonstration of unconstitutionality sufficient to overcome the presumption that the statute is valid. Under the common law, no inherent right of inheritance existed regardless of whether the survivor was legitimate or illegitimate. See generally, Redfearn, Wills and Administration of Estates in Florida (2nd ed. 1933), §§ 2-5, English statutory enactments eventually provided for inheritance, but illegitimates were not granted the privilege. In modern times, there has been a tendency to lessen the strictures on the illegitimate's ability to inherit. Most of our States have enacted legislation permitting these children to inherit from and through their mothers. See, e.g., Cal.Prob.Code, § 257 (West 1956); N.Y. Estates, Powers and Trusts Law, McKinney's Consol.Laws, c. 17-b, § 4-1.2 (McKinney 1967).
Florida allows inheritance from the mother, and also, when the child is recognized, from the father. Fla. Stat. § 731.29 (1), F.S.A. Marriage of the mother to the reputed father after birth legitimatizes the child in all respects. Fla. Stat. § 742.091, F.S.A. A judgment of adoption makes the child a legal heir. Fla. Stat. § 72.22, F.S.A. Additionally, an acknowledged illegitimate child is the equal to a legitimate child under certain specialized legislation; see, e.g., Fla. Stat. § 440.02(13), F.S.A., involving workmen's compensation.
Where statutes give a legitimate status to the illegitimate, this Court has consistently favored a liberal construction of the statutes. See Ezell-Titterton, Inc. v. A.K.F., 234 So.2d 360 (Fla. 1970) (child held as acknowledged after father died shortly after conception); Wall v. Altobello, 49 So.2d 532 (Fla. 1950), (hotel registration card signed in presence of clerk held sufficient acknowledgment of paternity); In re Horne's Estate, 149 Fla. 710, 7 So.2d 13 (1942) (father's letter to college registrar signed before witness held sufficient acknowledgment). Other courts have favored a liberal approach to the question of inheritance by illegitimates through collaterals where a legislative scheme supports it; see, e.g., In re Garcia's Estate, 34 Cal.2d 419, 210 P.2d 841 (1949).
But though we prefer a liberal interpretation of the Florida legitimacy statutes, the fact remains that where not altered by statute, the common law status of illegitimate children remains in force. 10 C.J.S. Bastards § 26a; 26 F.L.P., Wills, § 35; 34 Fla.Jur., Wills, § 20; Savage v. Blanks, 117 Ga. App. 316, 160 S.E.2d 461 (1968). Fla. Stat. § 731.29, F.S.A., the statute we review today, has not altered the common law in regard to the inheritance through collaterals; rather, it restates *4 the common law in statutory form. It is not within our prerogative to strike down this statute, a reflection of a longstanding common law policy, solely upon the basis of language in federal Supreme Court cases involving wrongful death and the resultant liability of tort-feasors.[1] We find the Levy and Glona decisions to be sufficiently distinguishable to defeat appellees' claim that they have overcome the presumption of the validity of Fla. Stat. § 731.29, F.S.A. It is interesting to note that the Supreme Court of the United States has denied certiorari in a relatively similar case; see, Fuhrhop v. Austin, 385 Ill. 149, 52 N.E.2d 267 (1943), cert. den. Wilson v. Fuhrhop, 321 U.S. 796, 64 S.Ct. 849, 88 L.Ed. 1085 (1944).
The Order Determining Heirs entered below is reversed, and this cause is remanded for further treatment consistent with this opinion.
It is so ordered.
BOYD, McCAIN and DEKLE, JJ., concur.
DREW, J. (retired), concurs specially with opinion.
ERVIN, J., dissents with opinion.
ROBERTS, C.J., dissents and concurs with ERVIN, J.
DREW, Justice, Retired (concurring specially).
The constitutionality of Section 731.23, Florida Statutes, F.S.A., is, in my opinion, wholly immaterial in the consideration of the issue in this case.
Much is said in the opinion of the trial court, in the opinion of the majority and the dissenting Judge about the rights of the illegitimate next of kin and the rights of other collateral heirs of the deceased. The greatest right involved here, it seems to me, is the right of the deceased Hortense Caldwell to leave her property to whomsoever she pleased. No one would question the right of the deceased in her lifetime to dispose of her property as she desired. Had she elected to leave a Will, she could have bequeathed her property to the illegitimates or others in such manner and in such amounts as she desired. Instead of giving her property away during her lifetime or leaving a Will, she died intestate. It must be presumed that at the time of her death she knew that under the laws of this State, her property would not descend to the illegitimates. We must assume that she elected to leave her property in this manner.
It is a common practice for people, after being advised of the laws of descent, to elect not to leave a Will, thereby allowing their property to descend according to the laws of the state.
If the deceased had left a Will providing that her property should descend according to the laws of intestacy, such laws in effect at the time of her death would have become a part of her Will. Under the laws of this State, a change in the statutes subsequent to her death could not have altered the manner of descent and distribution.[*] The fact that she left no Will makes no difference. The rule universally applied in the construction of Wills is that, where ascertainable, the court's duty is to give effect to the intent of the testator. Such intent, it has often been said, is the "pole star" to guide the court. This rule, it *5 seems to me, is clearly applicable here even though the deceased died intestate.
For the above reasons, as well as the reasons advanced in the majority opinion, I conclude that the illegitimates are not entitled to receive any part of the estate of Hortense Caldwell and that the decision of the trial court should be reversed.
ERVIN, Justice (dissenting):
I would adopt as the opinion of this Court the excellent order of County Judge Frank B. Dowling, which reads in part as follows:
"Under the English common law, a bastard could not be the heir of anyone, and neither could he have heirs except the heirs of his own body; being nullius filius, he was considered to be kin to nobody and to have no ancestor from whom any inheritable blood could be derived, and in this country, except for one jurisdiction (Connecticut), it is generally recognized that in the absence of any statute conferring rights of inheritance upon them, illegitimate children are without capacity to inherit from or through either parent. Common law disabilities of the illegitimate are relaxed or removed only to the extent that the legislature has seen fit to remove them, and no rights of inheritance can exist in any case which is not within the statute. 10 Am.Jur.2d Sec. 146, Pg. 948.
"It is elementary that the legislatures of the various states may prescribe rules of descent of property for person dying intestate within the state. Florida has passed such a statute, the same being Section 731.23, Florida Statutes, [F.S.A.] providing as follows:
"`The real and personal property of an intestate shall descend and be distributed as follows:
(1) To the surviving spouse and lineal descendants, the surviving spouse taking the same as if he or she were one of the children.
(2) If there are no lineal descendants, to the surviving spouse.
(3) If there is no surviving spouse, to the lineal descendants.
(4) If there is none of the foregoing, to the father and mother equally, or to the survivor of them.
(5) If there is none of the foregoing, to the brothers and sisters and the descendants of deceased brothers and sisters.
(6) If there is none of the foregoing, the estate shall be divided into moieties, one of which shall go to the paternal and the other to the maternal kindred in the following course:
(a) To the grandfather and grandmother equally, or to the survivor of them.
(b) If there is no grandfather or grandmother, to the uncles and aunts and the descendants of such of them as may be deceased.'
"The State of Florida has also enacted a statutory provision for inheritance by those of the half blood. In Section 731.24, Florida Statutes, [F.S.A.] it is provided:
"`In the cases before mentioned, where the estate is directed to pass to the collateral kindred of the intestate, if part of such collateral kindred are of the whole blood to the intestate and the other part of the half blood only, those of the half blood shall inherit only half as much as those of the whole blood; but, if all are of the half blood, they shall have whole portions.'
"After the admission of the State of Florida into the Union of the United States of America in 1845, there was enacted a statute in this state now appearing as Section 2.01 which declared the common law and statute laws of England *6 to be of full force and effect in this state in the following language:
"`2.01 Common law and certain statutes declared in force. 

The common and statute laws of England which are of a general and not a local nature, with the exception hereinafter mentioned, down to the fourth day of July, 1776, are declared to be of force in this state; provided, the said statutes and common law be not inconsistent with the constitution and laws of the United States and the acts of the legislature of this state.'
"From the foregoing it is observed that by statute the State of Florida has embraced the common law of England as the law of this state except where it is changed by statute of this state or where it may be inconsistent with the Constitution and Laws of the United States and the State of Florida. Florida proceeded to change the common law of England relating to illegitimates from the status of a non person, and the heir and child of no one, to provide in Section 731.29, Florida Statutes, [F.S.A.] as follows:
"`Illegitimate child as heir.

(1) Every illegitimate child is an heir of his mother, and also of the person who, in writing, signed in the presence of a competent witness, acknowledges himself to be the father. Such illegitimate child shall inherit from his mother and also, when so recognized, from his father, in the same manner as if the child had been born in lawful wedlock. However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have intermarried, in which event such illegitimate child shall be deemed legitimate for all purposes.
(2) If any illegitimate child dies intestate, without lawful issue or spouse, his estate shall descend to his mother, or, in case of her decease, to her heirs at law.'
"It has been uniformly held throughout the states that laws of descent and distribution in intestate estates refer only to those of lawful kinship and having inheritable blood. Statutes of descent and distribution, such as Section 731.23, Florida Statutes, [F.S.A.] above quoted, which provide generally for the distribution of intestate property of a deceased person among certain classes of persons without mentioning illegitimates, are construed to refer to legitimates only, unless there is something in the language of the particular statute which indicates a different intention on the part of the legislature. 48 ALR2nd 764, Sec. 3(c). It has been held that a statute giving an estate to the brothers and sisters of an intestate dying without issue or father or mother, and providing that kindred of the half blood shall inherit equally with those of the whole blood, does not include descendants of illegitimate brothers and sisters. Truelove v. Truelove, 172 Ind. 441, 88 N.E. 516, 1018.
"The Florida Supreme Court in the case of Williams v. Kimball, [35 Fla. 49] 16 So. 783, in considering the effect of a statute of this state authorizing an illegitimate to inherit from his mother, held as follows:
"`The construction given generally by the courts to acts of this kind have been a strict one. In such cases it has been held that a bastard might inherit from his mother, or his mother from him; but there the inheritable blood became dammed up in his veins, and its current could flow no further. It did not extend to collateral kindred.'
(The Florida Supreme Court there pointed out that) `* * * the very language of the statute had been construed by the Supreme Court of the United States in the case of Stevenson's Heirs v. Sullivant, 5 Wheat [18 U.S.] *7 207, [5 L.Ed. 70] Text 260, where the Court said as follows:
`In the construction of this section it must never be lost sight of that the appellants are to be considered as bastards, liable to all the disabilities to which the common law subjects them as such, except those from which the statute itself exempts them. Though illegitimate they may inherit and transmit inheritance, on the part of the mother, in like manner as if they had been lawfully begotten of the mother. As bastards they were incapable of inheriting the estate of their mother, notwithstanding they were the innocent offspring of her incontinence, and were, therefore, in the view of the legislature, and consonant to the feelings of nature, justly entitled to be provided for out of such property as she might leave undisposed of at her death. The current of inheritable blood was stopped in its passage from and through the mother, so as to prevent the descendant of the mother's property and of the property of her ancestors either to her own illegitimate children, or to their legitimate offspring. The object of the legislature would seem to have been to remove this impediment to the transmission of inheritable blood from the bastard, in the descending line, and to give him a capacity to inherit in the ascending line, and through his mother. But although her bastard children are, in these respects, quasi legitimate, they are nevertheless, in all others, bastards, and as such they have and can have neither father, brothers, nor sisters. They cannot therefore inherit from Richard Stevenson, because, in contemplation of law, he is not their brother.'
"In all the statute law of the State of Florida, only Section 731.29, Florida Statutes, [F.S.A.] confers any right of inheritance upon an illegitimate. * * *
"Section 731.29, Florida Statutes, [F.S.A.] provides that an illegitimate child shall inherit from his mother and also, when recognized in writing before a witness to be his child, from his father, in the same manner as if the child had been born in lawful wedlock. EUNICE, HOWARD, and EDITH have been recognized in writing by HENRY CALDWELL as his children and they could inherit from him. However, the statute further restricts the right of inheritance by an illegitimate child by providing:
`However, such illegitimate child does not represent his father or mother by inheriting any part of the estate of the parents' kindred, either lineal or collateral, unless his parents have intermarried.'
"HORTENSE CALDWELL, the decedent in this estate, is the lineal kindred of HENRY CALDWELL, but this restrictive provision of the statute would prevent her half brother and sisters from inheriting any part of her estate by representation though their common father.
"Under Section 731.23, Florida Statutes, [F.S.A.] all lineal descendants are heirs at law of their intestate mother or father. If the law of descent and distribution of an intestate's estate as provided in Section 731.23, Florida Statutes, [F.S.A.] was not restricted to legitimate and lawful next of kin, there would have been no reason or purpose in the legislature enacting Section 731.29, Florida Statutes, [F.S.A.] providing for heirship of an illegitimate from the mother and the father under certain circumstances. It was clearly the intent of the legislature to change the harsh rule of the common law excluding bastards from inheritance but only to the extent as provided in Section 731.29, Florida Statutes, [F.S.A.].
"The foregoing has been recognized and held to be the law of this state for over a century and thus would exclude the illegitimate children of HENRY CALDWELL from any right of inheritance in the estate of their intestate half sister, HORTENSE CALDWELL. This would *8 require that the Court determine that her collateral next of kin through lawful blood lines possess the only inheritable blood and have the sole and exclusive right of inheritance. However, this easily reached conclusion must be reconsidered and examined in the light of recent decisions of the Supreme Court of the United States of America and of other states. Looking at the fourteenth amendment to the Constitution of the United States of America and Section 1 thereof, we find that the same provides as follows:
`SECTION 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'
"Under the Declaration of Rights of the Constitution of the State of Florida, it is provided in Section 1 that all men are equal before the law, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing and protecting property, and pursuing happiness and obtaining safety. That the legislature may prescribe rules of descent of property for persons dying intestate within this state as heretofore mentioned is undenied. The basic question is whether it may do so in such an arbitrary manner that it offends the respective provisions of the State and Federal Constitutions which guarantee to every citizen the equal protection of the laws.
"In prescribing rules of descent of property for persons dying intestate and setting forth those classes of persons who may take under certain circumstances, we note that the Federal and State Constitutions do not prohibit or prevent classification, provided such classification is reasonable for the purpose of the legislation. The classification must not be arbitrary and shall not constitute a subterfuge to shield one class against the other, or to burden another class or to oppress anyone unlawfully in its administration. A proper classification for legislative purposes must embrace all who naturally belong to the class. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts. Classification must also rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed.
"In this case the legislature of the State of Florida, in its law of descent and distribution, has provided that half brothers and half sisters may inherit from their intestate half sister in the absence of surviving spouse, lineal descendants, and mother and father. But this is provided that they are legitimate and possess inheritable blood. If they are illegitimate, they are barred from such inheritance. Thus we see that persons of the same class, namely, half brothers and half sisters, are divided arbitrarily into legitimate and illegitimate for the purpose of inheritance without regard to the fact that they are of equal next of blood kin.
"It was long since held in the case of Carrington v. Rash, 38 [380] U.S. 89, 91 [85 S.Ct. 775], 13 L.Ed.2d 675 that the privilege to vote in a state is within the jurisdiction of the state itself, to be exercised as the state may direct, or upon such terms as to it may seem proper, provided, of course, no discrimination is made between individuals in violation of the Federal Constitution.
"Recently, and more to the point of the facts presented here, in the case of Levy v. Louisiana, 391 U.S. 68, 70, 88 S.Ct. 1509, 1510-1512, 20 L.Ed.2d 436 (1968), the Supreme Court of the United States declared that a statute which denied to illegitimate *9 children the right to recover for wrongful death of their mother, on whom they were dependent, constituted invidious discrimination against them and thus was in violation of the equal protection clause of the fourteenth amendment to the United States Constitution. In fact case, Justice Douglas, speaking for the majority, said:
"`We start from the premise that illegitimate children are not "nonpersons." They are humans, live and have their being. They are clearly "persons" within the meaning of the Equal Protection Clause of the fourteenth amndment.
* * * * * *
* * * When the child's claim of damage for loss of his mother is in issue, why, in terms of "equal protection," should the tortfeasors go free merely because the child is illegitimate? Why should the illegitimate child be denied rights merely because of his birth out of wedlock? He certainly is subject to all the responsibilities of a citizen, including the payment of taxes and conscription under the Selective Service Act. How under our constitutional regime can he be denied correlative rights which other citizens enjoy?
* * * * * *
`We conclude that it is invidious to discriminate against them when no action, conduct, or demeanor of theirs is possibly relevant to the harm that was done the mother.'
"A case almost identical with the one under consideration is that of In re Estate of Jensen decided by the Supreme Court of North Dakota November 14, 1968, reported 162 N.W.2d 861. In the Jensen case, the question was the distribution of the estate of Chris E. Jensen. The disputants on one side were the legitimate children of Mr. Jensen, and on the other side were the illegitimate children of Mr. Jensen.
"The lower Court held that the North Dakota Statute prohibited the illegitimate children from inheriting from the deceased and an order was entered providing that the legitimate children were the only heirs at law of the deceased Jenson who died intestate. On appeal from order denying the motion to vacate that judgment the cause was reversed and the final decision was to the effect that the illegitimate children should share with the legitimate children in the distribution of the estate. The statute in question in the Jensen case was very similar in form to the statute of the State of Florida relating to inheritance by illegitimates which has been quoted above. The North Dakota statute provided:
"`Every child born out of wedlock is an heir of the person who in writing signed in the presence of a competent witness acknowledges himself to be the father of such child. In all cases such child is an heir of his mother. He, however, does not represent his father or mother by inheriting any part of the estate of the kindred of his father or mother, either lineal or collateral, unless before his death his parents shall have intermarried and his father after such marriage shall have acknowledged him as his child or adopted him into his family.'
"The constitutionality of the North Dakota statute was attacked in the Supreme Court of North Dakota on the final appeal as being in violation of Section 1 of the fourteenth amendment to the United States Constitution and of the North Dakota Constitution. In commenting, that Court observed:
"`Applying the reasoning in Levy, as no action, conduct, or demeanor of the illegitimate children in the instant case is relevant to their status of illegitimacy, we conclude that the classification for purposes of inheritance contained in Section 56-01-05, which is based on such a status and which results in illegitimate children being disinherited while their legitimate brothers and sisters inherit, is unreasonable.

*10 "`Accordingly, considering Section 56-01-05 in light of Section 56-01-06, and in light of the repeal in 1917 of C.L. 1913, Section 5745, the predecessor of Section 56-01-05, and its incredible return to life, we have no hesitance in holding that Section 56-01-05 is unconstitutional as an invidious discrimination against illegitimate children in violation of Section 1 of the fourteenth amendment to the United States Constitution and Section 20 of the North Dakota Constitution. This statute, which punishes innocent children for their parents' transgressions, has no place in our system of government, which has as one of its basic tenets equal protection for all.'
"The legitimate children of Jensen further contended that even in the event the North Dakota Act complained was found to be unconstitutional, that the illegitimate children would gain no relief therefrom for the reason that the common law would then apply and under the common law the illegitimates would not be entitled to inherit from their father. The same contention may be raised in the instant case when considering the constitutionality of Section 731.29, Florida Statutes, [F.S.A.]. The North Dakota Court went on to say:
"`With it we do not agree. As we have said in a recent decision: "In this state there is no common law in any case in which the law is declared by the Code." Nuelle v. Wells, 154 N.W.2d 364 (N.D. 1967), Syllabus 1.
"`That being the rule, with Section 56-01-05 struck down as being in violation of the equal protection clauses of Section 1 of the fourteenth amendment to the United States Constitution and Section 20 of the North Dakota Constitution, the appellants are entitled to share in the decedent's estate by virtue of Section 56-01-04(3) and Section 56-01-12, which provide for inheritance without regard to legitimacy.'
"This Court finds that Section 731.29, Florida Statutes, [F.S.A.] is unconstitutional and, therefore, null, void and of no force and effect in that the same unjustly and unlawfully discriminates against illegitimate next of kin prohibiting them from enjoying the same rights as legitimate next of kin of the same class in violation of Section 1 of the fourteenth amendment to the Constitution of the United States and the Constitution of the State of Florida.
"The common law of England as adopted by Section 2.01, Florida Statutes, [F.S.A.] cannot come into force for we have Section 731.23, Florida Statutes, [F.S.A.] providing how real and personal property of an intestate shall descend and be distributed without regard to the legitimacy or illegitimacy of the next of kin therein referred to. This latter statute provides that where there is no surviving spouse or lineal descendants and no mother or father, then to the brothers and sisters. Section 731.24, Florida Statutes, [F.S.A.] provides that where the estate is directed to pass to collateral kindred of the intestate, if part of such collateral kindred are of the whole blood to the intestate and the other part of the half blood, only those of the half blood shall inherit only half as much as the whole blood; but, if all are of the half blood they shall have whole portions.
"The determination that Section 731.23, Florida Statutes, [F.S.A.] providing for the descent and distribution of the property of a person dying intestate in this state applies to all persons legitimate or illegitimate who fall within the various classifications, is no bar to the right of any person to execute a valid last will and testament, leaving the testator's estate to those of his choice and to the exclusion of those that he does not wish to benefit therefrom.
"The Court finds from the evidence in this cause that there are no next of kin of the whole blood entitled to take as an heir or beneficiary of HORTENSE CALDWELL, *11 deceased. The Court further finds that EUNICE CALDWELL, EDITH CALDWELL, and ETHEL CALDWELL are half sisters of the deceased and that HOWARD CALDWELL is a half brother of the deceased. It is, therefore:
"ORDERED AND ADJUDGED that the lawful heirs and beneficiaries of the Estate of HORTENSE CALDWELL who died intestate are EUNICE CALDWELL, EDITH CALDWELL, ETHEL CALDWELL, and HOWARD CALDWELL, each of whom shall share equally in the distribution of the decedent's estate."
This Court has not hesitated in previous cases to deviate from archaic rules of law. It is time to do so again.
When changing times have demanded changing laws, we have declared statutes unconstitutional under the due process and equal protection clauses of the Federal Constitution and the Declaration of Rights of the Florida Constitution. In Georgia Southern & Florida Ry. Co. v. Seven-Up Bottling Co., Fla. 1965, 175 So.2d 39, we found that while there may be a valid justification for a statute at the time it is enacted, the law may "become a discriminatory and burdensome exercise of the police power because of changed conditions." There, we recognized that Florida's 1887 comparative negligence statute, which applied only to railroads, was constitutional when enacted since railroads were then in a class by themselves as dangerous instrumentalities in overland transportation. We concluded, however, that they were now being denied due process and equal protection of the law since later on other dangerous transportation instrumentalities had come into extensive use which were not covered by the statute.
Just a few days ago in Hialeah Race Course., Inc. v. Gulfstream Park Racing Association, Inc., 245 So.2d 625, opinion filed February 25, 1971, we struck down the 23-year old "Hialeah Law" which since enactment has had the effect of giving Hialeah Race Track prime seasonal racing dates over other tracks analogously located and circumstanced on the basis of changed conditions violative of equal protection. What we have done for corporations we can with equal justice do for innocent children.
Rather than adhere to an unjust rule because it had been the common law of the land for over two hundred years, this Court rejected the doctrine of sovereign immunity for municipal corporations saying:
"* * * we * * * feel that the time has arrived to declare this doctrine anachronistic not only to our system of justice but to our traditional concepts of democratic government. * * * In doing this we are thoroughly cognizant that some may contend that we are failing to remain blindly loyal to the doctrine of stare decisis. However, we must recognize that the law is not static. The great body of our laws is the produce of progressive thinking which attunes traditional concepts to the needs and demands of changing times." Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130, at 132, 133.
In Waller v. First Savings & Trust Co., 1931, 103 Fla. 1025, 138 So. 780, this Court held that a plaintiff's cause of action in a tort suit survived the death of the tort feasor; under English common law, the cause of action did not survive. The Court looked into the history of the common law rule and found that originally tort actions were permitted for retaliation; at that time, then, it was reasonable to have a rule which did not permit the continuation of the cause of action after the death of the wrongdoer. Now, however, such actions are to recompense the injured. This purpose cannot be accomplished if the cause of action dies. And the Florida Supreme Court rejected the common law rule, stating: "When the reason for a rule has passed, the rule itself should no longer stand, and a new rule in harmony with changed conditions should be recognized, *12 se non e vero e ben trovato." (Waller, 138 So. at 785.)
It is time to change the rules regarding illegitimate children.[1] Supreme Court of the United States has already given them right to bring a wrongful death action (Levy v. Louisiana, 1968, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436) and to receive welfare assistance when their mother cohabits with a man who is not obligated to support her children (King v. Smith, 1968, 392 U.S. 309, 88 S.Ct. 821, 19 L.Ed.2d 869).
From time to time, under enlightened concepts of modern maturity and human dignity, we have thrown off the shackles of George III's feudalisms of rank and class.
It may have seemed appropriate in Dr. Samuel Johnson's day (1709-84) to accord validity to laws which discriminated among illegitimate and legitimate progeny in order to support rank and feudal class blood lines, but we long since have broken away from monarchial England.[2] Our constitutions, adopted after 1776, with their guarantees of equal protection for all citizens, preclude laws which make artificial distinctions based on slavery, race, sex, and other considerations of class. Modern decisions of the highest court in the land appear to hold that states cannot discriminate among one's offspring by laws relating to inheritance on the basis of legitimacy. Judge Dowling has made this quite clear.
ROBERTS, C.J., concurs.
NOTES
[1] Subsequent to the filing of this opinion, it was learned that the Supreme Court of the United States decided a similar case entitled Labine v. Vincent, 401 U.S. 532, 91 S.Ct. 1017, 28 L.Ed.2d 288, March 29, 1971. The Supreme Court distinguished Levy and Glona as we do today, and held that inheritance by illegitimates is a matter to be decided by the respective States of the Union.
[*] See Redfearn, Wills and Administration of Estates in Florida (Second Edition), pages 138 and 201.
[1] See Garbis, The Florida Bastardy Act  A Law in Need of Change, 24 U.Miami L.Rev. 713 (1970), esp. at 721, where the author discusses the need to grant equal protection of the law to bastards.
[2] According to Boswell, Dr. Johnson, a devout Tory and pensioner of George III, though himself without feudal heritage, stoutly defended English laws barring illegitimates from inheriting on the theory this was one of the means necessary to the "subordination of society" in a monarchy.